## Cox *v.* State.

### Opinion delivered January 2, 1904.

1. LEGISLATURE—APPOINTMENT OF OFFICERS.—The legislature has power to make appointments to office unless its powers in that respect are restricted by the constitution, either expressly or by implication. (Page 97.)

2. SAME—EXTENT OF POWER OF APPOINTMENT.—Const. 1874, art. 5, § 14, providing that "whenever an officer, civil or military, shall be appointed by the joint or concurrent vote of both houses, or by the separate vote

of either house of the General Assembly, the vote shall be taken *viva voce,* and entered on the journals," recognizes in the legislature the power to make appointments in cases not otherwise provided for, and such power is not confined merely to officers necessary to the discharge of legislative duties. (Page 98.)

3. GOVERNOR—POWER OF APPOINTMENT.—The governor has no inherent power by virtue of his office or of art. 6, § 23, and of the amendment to the constitution providing for filling vacancies in office until the next general election (which provisions plainly refer only to elective offices), to appoint the state capitol commissioners, a board created for a special purpose, the members of which are not elective, and whose terms will expire with the completion of the work. (Page 99.)

4. OFFICE—COMMISSIONER.—Whether the state capitol commissioners are "public officers," *quaere.* (Page 100.)

5. CONSTITUTIONAL LAW—CAPITOL COMMISSION ACT.—Acts 1903, p. 248, providing that the members of the board of state capitol commissioners should be elected by the two houses of the legislature, is constitutional. (Page 100.)

Appeal from Pulaski Circuit Court.

EDWARD W. WINFIELD, Judge.

Affirmed.

### STATEMENT BY THE COURT.

The General Assembly of 1903 passed an act for the purpose of completing the state capitol. Act 1903, p. 248. The title of the act is "An act to provide for the completion of the state capitol building, and for other purposes." To carry into effect the purposes of the act, it created a board to be known as the "State Capitol Commission." It provided that the board should consist of five persons, to be elected by the Senate and House of Representatives in the manner provided in the act. This act was passed over the veto of the governor, he having vetoed the bill on the ground that the legislature had no power to select the commissioners provided for by the bill, and also for other reasons stated by him. Afer the passage of the act the governor immediately appointed five commissioners to carry out the purposes of the act. The action of the governor was ignored by the legislature, and the two houses, in joint session soon afterwards, elected five commissioners as provided by the statute. Afterwards the

attorney general brought in the circuit court of Pulaski county
an action in the nature of an action of *quo warranto* against the
commissioners appointed by the governor, asking that they be
compelled to show by what authority they were attempting to
act as a board of capitol commissioners, and that upon a hearing
they be ousted. The defendants appeared, and filed their answer,
setting up their appointment by the governor. The case was
tried by the circuit judge on an agreed statement of facts. He
found the law to be in favor of the contention of the attorney
general, and gave judgment of ouster against the defendants,
who took an appeal to this court.

*Chas. Jacobson,* for appellants.

The court should have granted the temporary injunction
against the legislature's commission. Sand. & H. Dig., § 5712.
The position of state capitol commissioner is an office, and not
a mere employment. 68 N. Car. 457; 66 N. Car. 59; 5 Bing. 91;
41 Mo. 29; 36 Miss. 273; 20 Wend. 595; 16 N. Y. 381; 73 U.
S. 385; 2 Cr. C. C. 78; 11 R. I. 638. They are subject to the
constitutional provisions governing the filling of vacancies in
office. 17 L. R. A. 243; 4 Utah, 421; s. c. 132 U. S. 632; 121
Ind. 495; 66 N. C. 59; 7 Oh. 546. *Cf.* 45 Ill. 410, 412. As to
legislative power to fill vacancies in office, see: Const. 1874,
art. 5, § § 11, 14, 23; *Id.,* Amendment No. 3. *Cf.* Const. 1836,
art. 5, § § 14, 15; *Id.,* art. 4, § 28; Const. 1861, art. 4, § § 26, 27;
*Id.,* art. 5, § § 14, 15, 6, 26; Const. 1868, art. 5, § 34. See, gener-
ally, as to appointive power of legislature: 34 Ind. 197; 10
Wheat. 46; 1 Ark. 576; 11 Pa. 489.

*Geo. W. Murphy, Attorney General, John M. Rose* and
*Chas. T. Coleman,* for appellee.

The appointing power is not an exclusive prerogative of the
executive department. Webst. Speech on Presidential Protest.
See also 17 Ore. 460; s. c. 21 Pac. 880; 21 Pac. 24; 80 Cal.
233; Cooley, Const. Lim., 133; 22 Ore. 142; s. c. 29 Am. St.
586; 5 Nev. 111; 24 Mich. 44; 11 Nev. 128; 21 Oh. St. 14; 18
Mo. 333; 15 Md. 376; 114 Ga. 881; 20 Ark. 212; 15 Ark. 674;
28 Ark. 270. An officer, in the sense of the constitution, is one

who, by authority of law, exercises some portion of the sovereign power of the state in one of the three great departments of the government. 45 Ill. 397; 3 Wall. 93; 3 Dak. 416; s. c. 20 N. W. 416; 3 Greenl. (Me.) 481; Mechem, Pub. Off., § 4; 28 Cal. 603; 33 La. Ann. 446; 3 Okla. 682; s. c. 41 Pac. 635; 89 N. Car. 133; 43 Atl. 646; 22 Ore. 142; s. c. 29 Am. St. 586; 14 Ore. 98; 81 Ky. 67; 16 Ind. 501; 21 N. E. 21; 141 Ind. 624; 21 Oh. St. 50; 20 Johns. 491; 52 N. Y. 478; 49 Oh. St. 437. The appointing power vested in the governor by the constitution only applies to elective officers. *Cf.* Const. 1836, art. 4, § 28; *Ib.,* art. 5, § 15; Const. 1861, art. 4 § § 13, 18, 27, 9; Const. 1864, art. 4, § § 19, 26; *Ib.,* art. 6, § § 15, 16; Const. 1868, art. 5, § 34; *Ib.,* art. 6, § 26; Const. 1874, art. 5, § § 6, 14; *Ib.,* art. 6, § § 22, 23; *Ib.,* art. 7, § 50.

RIDDICK, J. (after stating the facts.) This is an action brought by the attorney general against Thomas Cox and four other defendants, who were appointed by the governor to serve as members of the board of state capitol commissioners created by act of the last legislature. The act in question provided that the members should be elected by the two houses of the legislature in joint session. Acts of 1903, p. 249. In pursuance of this provision of the act, commissioners were duly elected by the legislature. But the governor, acting on the theory that the legislature had no power to make such selection, and that the power to appoint the members of the board was vested in him, appointed the five defendants to serve in that capacity, and this action was brought to test the validity of the appointments made by the governor. All parties wish to have the matter determined, and no objection is made to the form of the action or to the proceeding adopted, and we will proceed to consider the questions presented.

*First, as to the power of the legislature to make appointments to office:* In the United States the general power to appoint officers is not inherent in the executive or in any other branch of the government. It is a prerogative of the people, to be exercised by them or that department of the state to which it has been confided by the constitution. The legislature has, we think, power to make appointments to office unless its powers in that respect are restricted by the constitution, either expressly

s c—4

or by implication. *Hovey* v. *State,* 119 Ind. 386, 21 N. E. 890; *People* v. *Hurlbut,* 24 Mich. 64, 9 Am. Rep. 103; *State* v. *George,* 22 Oregon 142, 29 Pac. 356, 29 Am. St. Rep. 586;. *People* v. *Freeman,* 80 Cal. 233, 22 Pac. 173, 13 Am. St. Rep. 122, and extended and full discussion found in note; Cooley, Const. Lim. (6th Ed.) 104-133; 23 Am. & Eng. Enc. Law (2d Ed.) 340.

Now, an examination of our constitution will show that it not only contains no general or express prohibition against the exercise of the appointing power by the legislature, but it affirmatively shows that it was the intention of the framers of the constitution to permit the legislature to exercise such power to a limited extent. This is shown by the provision to the effect that if in an election for governor, secretary of state, treasurer, auditor or attorney general, two or more candidates for either of said offices shall receive an equal number of votes, then one of those persons receiving the highest votes "shall be chosen by the joint vote of both houses of the General Assembly." Art. 6, § 3, Const. 1874. It is shown also by the section which declares that "whenever an officer, civil or military, shall be appointed by the joint or concurrent vote of both houses, or by the separate vote of either house of the General Assembly, the vote shall be taken *viva voce,* and entered on the journals." Art. 5, § 14. The contention that this section refers only to the officers of the General Assembly, such as clerks, pages and others necessary to discharge of the duties of that body, does not seem to be borne out by the language used. Why should it speak of the appointment of officers, "civil or military," if that was the meaning? We do not recall any military officer attached to the legislature, or to either of its branches, and we think that the language used is too broad to justify the construction contended for. It is, of course, not usual to have vacancies in office filled by appointment made by the General Assembly, and under our constitution there are many offices which could not be filled in that way. But, though not the usual method, the language of the constitution above quoted shows that the framers of that instrument intended that it might be done in some cases not otherwise provided for, and this is not the only instance in which such power has been exercised by the legislature. It is well known that the last legislature made provision for digesting the statutes of the

state, and appointed both a digester and an examiner to do the work required. The act by which these appointments were made by the legislature was approved by the governor, who thus inferentially approved the contention that the legislature has in some cases power to make appointments, and that a statute which attempts to confer this power is not necessarily unconstitutional and void on that account. Acts of 1903, p. 414. We are, then, of the opinion from the language of the constitution itself that the legislature may to some extent, in cases not otherwise provided for, exercise the appointing power. It is also plain, we think, that the governor has no inherent power, by virtue of his position as chief executive of the state, to make these appointments. If he has such power, it must be because the constitution has conferred it upon him, and thus, inferentially at least, forbidden the legislature to make them.

The next question, then, is *whether the power to appoint commissioners to serve on a board such as the one created by this act has been conferred upon the governor by the constitution in such a way as to prohibit the legislature from making the appointments.* There are only two sections of the constitution quoted by counsel for appellants as conferring this power upon the governor. One of these is as follows: "When any office, from any cause, may become vacant, and no mode is provided by the constitution and laws for filling such vacancy, the governor shall have the power to fill the same by granting a commission, which shall expire when the person elected to fill said office at the next general election shall be duly qualified." Art. 6, § 23. The other section quoted is one of the amendments to the constitution, and is in the following language, towit: "The governor shall, in case a vacancy occurs in any state, district, county or township office in the state, either by death, resignation or otherwise, fill the same by appointment, to be in force until the next general election." Both of these provisions, by their terms, plainly refer to elective offices—to those state, county, township and other offices the incumbents of which are selected by election at regular intervals. This is shown by the fact that each of those sections limits the term of the appointee of the governor appointed under them to the time when the person elected to the office at the next general election shall qualify and

assume the duties of the office, thus making it plain that they refer to elective offices. Neither of these sections, we think, has reference to commissioners such as the members of the state capitol board; a board created for a special purpose, the members of which are not elective, and whose terms and offices will both expire with the completion of the work for which the board was created. If no mode for the selection of this board had been provided, it may be that the governor would have had the power to make the appointments, but we need not concern ourselves with that matter here, for in this case the statute expressly points out the method by which these commissions shall be selected.

We do not think it necessary to undertake to define very precisely what is meant by the term "public officer," as counsel has invited us to do, for, whether the members of this board can be said to be public officers or not, it is certain that, though the duties devolving upon them are of great importance, the positions they hold are of such a peculiar and limited kind that they do not come within the provisions in reference to the regular officers of the state found in the constitution. As we see it, there is nothing in the constitution which forbids that the members of such a board shall be selected by the legislature. The method of selecting the members of such boards is a matter to be determined by the legislature, which can leave it to the governor to make the appointments, or can, if deemed safe, make them itself.

We are, therefore, of the opinion that the legislature had the right to provide for the selection of the state capitol board in the way pointed out by this act, and that the appointment by the governor of these defendants to serve as members of that board was without any authority in law to support it, and conferred no power whatever upon them to act as such board.

The judgment of the circuit court was, in our opinion, right, and it is therefore affirmed.