WILLIAM H. BUCHHOLTZ *v.* R. MASON HILL ET AL.

[No. 27, April Term, 1940.]

282

*Decided May 22nd, 1940.*

The cause was argued before OFFUTT, PARKE, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Edward J. Ryan* and *W. Earle Cobey,* for the appellant.

*Walter C. Capper* and *Horace P. Whitworth,* for the appellees.

*William C. Walsh, Attorney General,* filed a brief as *amicus curiae.*

DELAPLAINE, J., delivered the opinion of the Court.

The question in this case is whether the Governor has the right to make an appointment to fill a vacancy in the office of clerk to the County Commissioners of Allegany County.

On July 27th, 1939, after Thomas P. Richards, the incumbent, had been ordered removed from the office by the Board of County Commissioners, William H. Buchholtz, the appellant, attempted to qualify for the office in Cumberland upon a commission from Governor Herbert R. O'Conor and a bond in the amount of $5,000. The County Commissioners, however, appointed R. Mason Hill to fill the vacancy; and the clerk of the Circuit Court for Allegany County refused to administer the oath of office to the appellant.

On January 20th, 1940, the appellant filed a petition for a writ of mandamus to command the clerk of the Circuit Court and the County Commissioners to allow him to qualify, and to command Hill to surrender the office to him. He alleged that Hill was holding the office illegally. The appellees demurred to the petition on the ground that the Governor had no power to fill the vacancy. The court passed an order sustaining the demurrer and dismissing the petition. From that order an appeal was taken.

The appellant contends that the clerk is a civil officer of the State and that the Governor has the authority to fill the vacancy under the Constitution of Maryland.

It is well established that a position is held to be a public office when it has been created by law and casts upon the incumbent duties which are continuing in their nature and not occasional, and which call for the exercise of some portion of the sovereignty of the State. The most important characteristic of a public office, as distinguished from any other employment, is the fact that the incumbent is entrusted with a part of the sovereign power to exercise some of the functions of government for the benefit of the people. But the necessity of taking an oath of office is also a very important test in

determining whether a certain position is a public office. *School Commissioners of Worcester County v. Goldsborough,* 90 Md. 193, 44 A. 1055; *Truitt v. Collins,* 122 Md. 526, 89 A. 850; *State Tax Commission v. Harrington,* 126 Md. 157, 94 A. 537; *Clark v. Harford Agricultural & Breeders' Assn.,* 118 Md. 608, 618, 85 A. 503. The office of county treasurer has been classified as a civil office of the State within the meaning of the Constitution, even though the office has been created by the Legislature and not by the Constitution. *Calvert County Commrs. v. Monnett,* 164 Md. 101, 164 A. 155. For many years the clerk to the County Commissioners of Allegany County was appointed by the board itself, Acts of 1829, ch. 25; Code Pub. Loc. Laws, (1860 Ed.), art. 1, sec. 16; Code Pub. Loc. Laws, (1888 Ed.), art. 1, sec. 34. But in 1900 the Legislature enacted that the clerk should be elected by the voters for a term of two years, Acts of 1900, ch. 25. Since 1904 he has been elected for a term of four years, Acts of 1904, ch. 169. The candidate who is elected receives a commission, takes an oath of office, and is required to give a bond for the faithful performance of his duties. He not only has custody of the records of the County Commissioners, but he also countersigns checks issued by the board, and is authorized to accept money payable to the county and to take affidavits to any papers to be filed in the office. Code Pub. Loc. Laws (1930 Ed.), art. 1, secs. 100-103, 113. From these facts it is evident that he is a civil officer of the State within the meaning of the Constitution.

The power to select the public officials of a state resides originally in the people, who may provide in their constitution how the power shall be exercised, or leave to the legislature the privilege of providing for the selection of any officials. *Baltimore v. State,* 15 Md. 376; 46 *C. J., Officers,* secs. 63, 64, 951. The authority to appoint to office and to fill vacancies is conferred upon the Governor in the following sections of article 2 of the Constitution, entitled "Executive Department":

"Sec. 10. He shall nominate, and by and with the advice and consent of the Senate, appoint all civil and military officers of the State, whose appointment or election is not otherwise herein provided for; unless a different mode of appointment be prescribed by the Law creating the office.

"Sec. 11. In case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the Legislature, or until some other person is appointed to the same office, whichever shall first occur; and the nomination of the person thus appointed during the recess, or of some other person in his place, shall be made to the Senate within thirty days after the next meeting of the Legislature."

Section 10 directs the Governor to appoint with the approval of the State Senate all officers whose appointment or election is not otherwise provided for. *Davis v. State,* 7 Md. 151, 161. Obviously, he has no authority to make the appointment of clerk to the County Commissioners of Allegany County, since the Legislature has prescribed that the clerk shall be elected. Section 11 directs the Governor to fill vacancies in all offices to which he makes the original appointments. His power to fill vacancies does not extend to offices which are filled in the first instance by election or by appointment by some one else. *Niles, Md. Constitution Law,* 112. The Maryland Constitution is unlike the Constitution of Arkansas, which provides that the Governor shall fill by appointment any vacancy that occurs in any office in the state. *Cox v. State,* 72 Ark. 94, 78 S. W. 756. While statutes are sometimes hastily and unskilfully drawn, a constitution imports the utmost discrimination in the use of language. Chief Justice Marshall declared that the patriots who framed the Federal Constitution must be "understood to have employed words in their natural sense, and to have intended what they have said." *Gibbons v. Ogden,* 9 Wheat. 1, 188, 6 L. Ed. 23, 68. The

Maryland Constitution was carefully written and solemnly adopted by the Constitutional Convention of 1867, and approved by the people of the state; we should therefore be careful not to depart from the plain language of the instrument. The Court of Appeals of Kentucky asserted in reference to the Constitution of that State: "This fundamental law was designed by the people adopting it to be restrictive upon the powers of the several departments of government created by it. * * * Its every section was, doubtless, regarded by the people adopting it as of vital importance, and worthy to become a part and parcel of a constitutional form of government, by which the governors as well as the governed were to be governed. Its every mandate was intended to be paramount authority to all persons holding official trusts, in whatever department of government, and to the sovereign people themselves. *. *· * Wherever the language used is prohibitory ·it was intended to be a positive and unequivocal negation. Wherever the language contains a grant of power it was intended as a mandate. *· * * To preserve the instrument inviolate we must regard its words, except when expressly permissive, as mandatory, as· breathing the spirit of command. *Varney v. Justice,* 86 Ky. 596, 600, 6 S. W. 457, 459; *McCreary v. Speer,* 156 Ky. 783, 162 S. W. 99, 102. The Maryland Court of Appeals has declared that where the Constitution of this State speaks plainly on a subject, a different interpretation should not be given· to the language merely because a literal interpretation might happen to be inconsistent with other parts of the instrument dealing with other subjects. *Cantwell v.· Owens,* 14 Md. 215, 226.

The Attorney General, appearing at the request of Governor O'Conor, argued that the chief executive of the State possesses an inherent power to fill the vacancy by implication. Our Constitution, like that of other states, provides: "The executive power of the State shall be vested in a Governor." Article 2, section 1. The Oregon Supreme Court, however, has clearly stated: "Now, if it could be shown that the power to appoint all

officers which are not expressly made elective by the people is a part of 'the chief executive power of the state,' the appellant's contention would be sustained; but no authority whatever has been cited to sustain this view, nor is it believed that any exists * * *. The framers of this instrument evidently designed that no prerogative powers should be left lurking in any of its provisions. No doubt they remembered something of the history of the conflicts with prerogative in that country from which we inherited the common law." *Biggs v. McBride,* 17 Or. 640, 21 P. 878, 881; 22 *R. C. L., Public Officers,* sec. 96. The Supreme Court of North Dakota has also declared: "A careful study of all authorities * * * has made it entirely clear to each member of this court * * * that when, as in this state, the express provisions of the constitution vest in the governor a limited power of appointment, such grant is exclusive, and no other or greater appointing power can be exercised." *State v. Boucher,* 3 N. D. 389, 56 N. W. 142, 149; 46 *C. J., Officers,* sec. 124. The appellant cited *Walsh v. People,* 72 Colo. 406, 211 P. 646; but the decision in that case merely recognized the right of the Governor of Colorado to make an *ad interim* appointment to a certain office, since he had express authority from the Legislature to appoint to that office with the advice and consent of the Senate. It is well settled in Maryland that the Governor has no inherent power to appoint to office, and that he can make an appointment only when clothed with authority by the Constitution of the Legislature. Judge Alvey and Chief Judge Boyd plainly held: "The Governor has no power of appointment except as expressly provided by the Constitution or statute; and if he attempt to make an appointment without such express authority, that appointment would simply be without effect." *Smoot v. Somerville,* 59 Md. 84, 93; *Cull v. Wheltle,* 114 Md. 58, 91, 78 A. 820.

This court has decided that the mode of filling any public office in this state, in the absence of such a provision in the Constitution, shall be determined by the

Legislature. *McCurdy v. Jessop,* 126 Md. 318, 322, 95 A. 37. The County Commissioners of Allegany County have been authorized by local law to remove their clerk for "any wilful neglect of duty or misbehavior in office at any time." Acts of 1904, ch. 169; Code Pub. Loc. Laws (1930 Ed.), art. 1, sec. 100. But the local law does not prescribe how a vacancy in the office shall be filled. Under the general law the county commissioners in every county of the state are vested with "full power" to appoint "a clerk to their board, and all other officers, agents and servants required for county purpose not otherwise provided for by law or by the constitution." Acts of 1929, ch. 354; Code (Supp. 1935), art. 25, sec. 1. It is a fundamental principle that the law does not favor repeals by implication, unless there is a manifest inconsistency between a statute and a later one, or unless their provisions are so repugnant and irreconcilable that they can not stand together. *Green v. State,* 170 Md. 134, 140, 183 A. 526; *State v. Clifton,* 177 Md. 592, 10 A. 2nd 703. We have definitely held that, unless there is a conflict, the general law in reference to the powers of boards of county commissioners is not repealed by an enactment of a local law; but that a statute conferring general powers upon county commissioners, if there is no repeal, remains in effect to supplement the local law. *Frownfelter v. State,* 66 Md. 80, 83, 5 A. 410; *Chaney v. Anne Arundel County,* 119 Md. 385, 389, 86 A. 1039. However, the court is not determining the validity of the appointment of R. Mason Hill in this case. It is a settled principle in the law of mandamus that the party applying for the writ must show both a clear legal right in himself and also an imperative duty on the part of the defendant; and unless a legal right and a corresponding duty are clearly established, there is no ground for the issuance of a mandamus. *State v. Taylor,* 59 Md. 338, 344; *Frederick County v. Fout,* 110 Md. 165, 174, 72 A. 765. Unless the right which the petitioner seeks to enforce is clear and unequivocal, it should not be granted. *State v. Latrobe,* 81 Md. 222, 238, 31 A. 788. The primary in-

quiry is directed to the right of the petitioner and the duty upon which the application is predicated. If these vital elements are lacking, a consideration of other requisites for the writ is superfluous. *Curlander v. King*, 112 Md. 518, 524, 77 A. 60.

Since the Governor has no authority to fill the vacancy alleged in this case, the court acted properly in sustaining the demurrer and dismissing the petition for mandamus.

*Order affirmed, with costs.*