Raymond CLINTON *v.* Bill CLINTON, Governor of the State of Arkansas, Julia Hughes Jones, Auditor of the State, Jimmy Lou Fisher, Treasurer of the State, William Enfield, Robert C. Compton, and Michael G. Epley

90-229                                                810 S.W.2d 923

Supreme Court of Arkansas
Opinion delivered June 3, 1991

586

*Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn*; and *Dodds, Kidd, Ryan & Moore*, by: *Judson C. Kidd*, for appellant.

*Shults, Roy & Kurrus*, by: *Robert Shults* and *David M. Donovan*, for appellee Governor Bill Clinton.

*Ron Fields*, Att'y Gen., by: *J. Brent Standridge*, Asst' Att'y Gen., for appellees Julia Hughes Jones and Jimmy Lou Fisher.

ROBERT L. BROWN, Justice. This appeal concerns the separation of powers between two of the three branches of government in Arkansas. The appellant, Raymond Clinton, whose standing is based on his citizenship and taxpayer status in Arkansas, sought to enjoin an illegal usurpation of the Public Service Commission by Governor Bill Clinton through the

appointment of three special commissioners to hear the Arkla-Arkoma case. The appellant further prayed to enjoin an illegal exaction by payment of funds relating to the Arkla-Arkoma suit. The chancellor upheld the statutory appointments, denied the injunctive relief, and dismissed the lawsuit.

The facts here are uncontroverted. Following the primary elections in May 1990, the three regular members of the Public Service Commission recused from considering the Arkla-Arkoma case for the stated reason that they wished to avoid any hint of a conflict of interest or impropriety.[1] Each commissioner had been appointed by the Governor, and each commissioner had been confirmed by the Arkansas Senate as required by law. *See* Ark. Code Ann. § 23-2-101(e) (1987). The Governor responded to the three recusals by appointing three special commissioners pursuant to his authority under Ark. Code Ann. § 23-2-102(a) (1987). The statute does not require senate confirmation of special commissioners, and no senate confirmation was obtained.

The appellant contends on appeal that this failing in the statute renders it void, both on its face and as applied to the appointments in this case, because it violates the principle of separation of powers. The appellant further contends that the chancellor erred in finding that senate confirmation of special commissioners would occasion the expense of special sessions and unduly burden the legislative process.

Arkansas's separation-of-powers provisions are set out in article 4, §§ 1 and 2 of the state constitution:

> § 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
> § 2. No person, or collection of persons, being one of

---

[1] Regular PSC Commissioner Sam Bratton testified at hearing that the three recusals were due to the nomination of Sheffield Nelson as the Republican candidate for governor and the nomination of Governor Bill Clinton as the Democratic nominee for the same position.

these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Unlike the federal constitution, there is no general appointment power in the state constitution authorizing the chief executive to make appointments to boards and commissions. Our constitution is silent on that point, although specific grants of the appointment power are made to the Governor in several instances:

    a. To fill vacancies in certain elected offices. Art. 6, § 23; amendment 29, § 1.

    b. To appoint special justices to the Arkansas Supreme Court. Art. 7, § 9.

    c. To fill vacancies on certain boards and commissions. Amendment 33, § 5.

    d. To fill certain vacancies on the Game and Fish Commission. Amendment 35, § 6.

    e. To fill certain vacancies on the Highway Commission. Amendment 42, § 5.

Early on, we held that there was no inherent power in the Governor under the state constitution to make appointments to boards and commissions, and we affirm that holding today. *See Cox* v. *State*, 72 Ark. 94, 78 S.W. 756 (1904). But that is not the precise issue confronting us in this case. Here, the Governor acted pursuant to a legislative act, which specifically authorized him to appoint special PSC commissioners without the necessity of senate confirmation:

> When any member of the Arkansas Public Service Commission is disqualified for any reason to hear and participate in the determination of any matter pending before the commission, the Governor shall appoint a qualified person to hear and participate in the decision on the particular matter.

Ark. Code Ann. § 23-2-102(a) (1987).

That act differs markedly from the Governor's authority to appoint regular PSC commissioners, because regular appointments do require senate approval:

> At the expiration of each of the commissioner's terms, the Governor, subject to the approval of the Senate, shall appoint one (1) member who shall hold office for a term of six (6) years.

Ark. Code Ann. § 23-2-101(e)(1) (1987). Due to the absence of senate confirmation in the case of special commissioners, the appellant argues that the General Assembly has impermissibly delegated a legislative power or function to the Governor in violation of the state constitution.

■ We begin by acknowledging a legal maxim in constitutional construction: Acts of the General Assembly are presumed to be constitutional and will only be struck down where there is a clear incompatibility between the act and the state constitution. *See Hickenbottom* v. *McCain*, 207 Ark. 485, 181 S.W.2d 226 (1944). The degree of the clarity of the conflict thus becomes all-important in determining whether the constitution has been violated.

That clarity is lacking in this case. As already said, the state constitution is silent on which branch of government has the general power to appoint special PSC commissioners. Moreover, the constitution does not say that the General Assembly has the exclusive right to appoint boards and commissions that perform legislative functions. For this reason, no doubt, the General Assembly has from time to time created a board or commission empowered to carry out a regulatory function and has authorized the Governor to execute the function of appointing board members without senate approval. *See, e.g.,* Ark. Code Ann. § 15-71-101 (1987) (Oil and Gas Commission); Ark. Code Ann. § 11-9-201 (1987) (Workers' Compensation Commission); and Ark. Code Ann. § 17-12-201 (1987) (Real Estate Commission). This is appropriate where the constitution is silent on which branch of government should make the appointments.

■ The appellant is correct in observing that the PSC is a creature of the General Assembly and, further, that it performs a legislative function under the design of legislative enactment. *See Southwestern Bell Tel. Co.* v. *Arkansas Public Service Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). As we said in the *Southwestern Bell Tel. Co.* case, the PSC has the same power the General Assembly would have when the PSC is operating within

the powers conferred upon it by legislative act.

The fact that the PSC is created by the General Assembly and performs legislative functions is not automatically dispositive of the appointment issue, however. The General Assembly may still delegate the right to appoint to the Governor, which we have acknowledged in the past. *See Cox* v. *State.* Though in *Cox* we expressly provided that there was no *inherent* appointment power in the Governor, we further said in reference to appointing membership to public service boards: "The method of selecting the members of such boards is a matter to be determined by the Legislature, which can leave it to the Governor to make the appointments, or can, if deemed safe, make them itself." 72 Ark. at 100, 78 S.W. at 757.

We have recognized delegation of appointments to the executive branch in other cases. *See, e.g., Oates* v. *Rogers*, 201 Ark. 335, 144 S.W.2d 457 (1940). In *Oates* the issue was whether circuit and chancery judges could be authorized to appoint the county tax collector by legislative act. We held that the power could not be delegated to the judiciary, but in doing so we noted the relationship between the executive and legislative branches concerning appointments and quoted from *Springer* v. *Phillipine Islands*, 277 U.S. 189 (1928), concerning separation of powers in the Phillipine government: "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." 201 Ark. at 338, 144 S.W.2d at 458, *quoting Springer* v. *Phillipine Islands*, 277 U.S. at 202. We concluded in *Oates* that we would not speculate on what our decision would be had the General Assembly delegated the appointment power to some authority other than the judiciary, thus leaving the door open to permissible delegations of authority by the legislature.

■ In sanctioning certain delegations of the appointment power by the General Assembly, we by necessity have recognized that the power does not exclusively lie in that body, regardless of the function to be performed by the board or commission. This is as it should be. Though not specifically endowed with a general appointment power under the state constitution, and though that power is not an inherent executive power, the Governor holds the

executive power — and that is the power to execute laws made by the General Assembly. When so authorized by the legislature, as is the case with the appointment of special PSC commissioners, that power embraces the ministerial task of appointing board personnel to carry out the enacted legislation.

We are not faced here with the delegation of an exclusive legislative function as we were in *Walden* v. *Hart*, 243 Ark. 650, 420 S.W.2d 868 (1967), where the General Assembly gave city commissioners and police chiefs complete authority to decide what constituted fire, police, and emergency vehicles without any legislative guidance. Nor is this a case where the General Assembly clearly erred in bestowing the power to appoint tax collectors on the judiciary rather than retaining the power itself or delegating it to the executive branch. *See Oates* v. *Rogers.*

■ In sum, we decline to extrapolate from the separation-of-powers principle an exclusive power to appoint special PSC commissioners in the General Assembly. Empowering the Governor to appoint special PSC commissioners, without senate approval, is a valid delegation of authority by the legislature to the branch of government that is equipped to execute and implement legislative mandates. We hold that § 23-2-102(a) passes constitutional muster.

■ We turn next to the question of whether the Governor's appointment of three special commissioners (representing the entire commission) to hear the Arkla-Arkoma case was an unconstitutional application of § 23-2-102(a). We grant the appellant that wholesale recusals of a full commission are not an ordinary circumstance. But in examining the specific language of that statute, we find nothing that would prohibit the Governor from appointing one special commissioner without senate approval, or, as we have in this case, from appointing three special commissioners. Again, the statute provides for gubernatorial appointment "[w]hen any member of the Arkansas Public Service Commission is disqualified." Ark. Code Ann. § 23-2-102(a) (1987). There is no limitation on the number of special appointments, and we will not read into the statute a requirement that is not there when the statute is unambiguous. *See Mears* v. *Arkansas State Hospital*, 265 Ark. 844, 581 S.W.2d 339 (1979).

There is, finally, the issue of whether the chancery court

hinged its order in part on the burden and expense that senate approval of special commissioners would cause due to special legislative sessions. We are not convinced that the chancellor's order is bottomed on this consideration. It appears, rather, to be premised on a finding that the appointment of special commissioners was legitimately delegated to the Governor by the General Assembly. We find no error on the point raised.

The order of the chancellor is affirmed.

CORBIN, J., not participating.