The Honorable Jim Argue, Jr. State Senator 5300 Evergreen Drive Little Rock, AR 72205-1814
Dear Senator Argue:
I am writing in response to your request for my opinion concerning the constitutionality of House Bill 1427 of the 86th General Assembly, which would add a chapter to the Arkansas Code entitled the "Arkansas Community Assistance Act of 2007," to be codified as A.C.A. §§15-13-101-109. Briefly summarized, the act would create the Arkansas Community Assistance Commission ("Commission") with authority to award state grants for certain listed projects and for other projects that the Commission determines serve a state purpose. The purpose of the act is stated in the bill as follows:
 The purpose of this chapter is to improve services to the citizens of this state and to assist the development of local communities through a program of state grants to cities, counties, state institutions, state agencies, and other entities that provide services to the citizens of this state.
HB 1427 (2007 Regular Session), § 1 (adding A.C.A. § 15-13-102).
You have requested my opinion in view of the Arkansas Supreme Court's recent ruling in Wilson v. Weiss, Ark. S. Ct. No. 06-740 (Dec. 14, 2006). The Court in Wilson held that Act 1898 of 2005, which appropriated $ 400,000 to the City of Bigelow for local improvements, "constitutes special and local legislation" *Page 2 
contrary to Amendment 14 to the Arkansas Constitution. Id. at 2.[1] You ask, specifically:
 Is HB 1427 an unconstitutional subterfuge to attempt to evade the Constitution and rulings of the Court?
RESPONSE
In my opinion the answer is likely "no," on the face of the bill. As discussed further herein there are four constitutional issues to consider. First, there is a question whether the bill would violate the restriction placed on the passage of "local and special" acts by Amendment 14 of the Arkansas Constitution, which was the controlling issue in Wilson. In my opinion, this bill does not violate that provision. Second, there is an issue as to the General Assembly's authority to appoint the members of the Commission. In my opinion, the fact that the Commission is appointed entirely by the Legislature in and of itself raises no constitutional concerns and is in fact supported by Arkansas Supreme Court precedent. Third, there is a separation of powers issue to be considered. In this regard, I am concerned that the bill may be vulnerable to legal challenges due to the absence of certain safeguards that have immunized similar legislation in other jurisdictions from attack on separation of powers grounds. I must also emphasize that the question of the bill's constitutionality may ultimately be determined by the actual degree of autonomy afforded the Commission in practice. Any suggestion that the Commission has not been afforded substantial independence will, in my opinion, likely sound HB 1427's death knell. Finally, I must address whether the bill constitutes an improper delegation of legislative authority to an administrative agency. In my opinion, it does not. *Page 3 
AMENDMENT 14 TO THE ARKANSAS CONSTITUTION-SPECIAL AND LOCAL
Your question reflects a concern that by permitting grants to local entities, such as that at issue in Wilson, HB 1427 unconstitutionally evades Amendment 14's proscription against "any local or special act."[2] While I realize that grants for purposes resembling those at issue in Wilson may be awarded pursuant to HB 1427, the critical distinction between this bill and the appropriation before the Court inWilson lies in the distribution mechanism established by HB 1427. As noted, the bill establishes the Arkansas Community Assistance Commission and vests it with the power and duty to "receive and evaluate applications for grants . . . and make grant awards" to "eligible entities from funds provided by the General Assembly. . . ." A.C.A. §§ 15-13-105(a) and-107(a).[3] The Commission has rulemaking authority (A.C.A. § 15-13-105(b)), and it appears clear from the face of HB 1427 that it is charged with implementing the act. This constitutes it as an executive agency. See generally Federal Express Corp. v. Skelton,265 Ark. 187, 197-98, 578 S.W.2d 1 (1979) (noting the "classic division of governmental powers," under which "the legislature makes the laws and appropriates public revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws.") In my view, this statutory mechanism for the distribution of grant funds does not offend Ark. Const. amend. 14 inasmuch as the amendment applies exclusively to legislative, as opposed to administrative, *Page 4 
actions. Indeed, such a mechanism may be a necessary, or at least an appropriate, response to Wilson, assuming that the bill is otherwise constitutional.
THE GENERAL ASSEMBLY'S POWER TO APPOINT THE MEMBERS
It is necessary to consider the possible implications of the particular method by which the Commission is constituted pursuant to HB 1427. Specifically, the bill calls for the appointment of the eight-member Commission by the President Pro Tem of the Senate and the Speaker of the House, each of whom appoints four members to serve two-year terms. A.C.A. § 15-13-104(a) and (b). Vacancies are filled by the initial appointing officer, and members are eligible for reappointment. Id. at (b).
According to Arkansas case law, this grant of appointive authority to the legislative branch does not render HB 1427 unconstitutional. Most recently in State Bd. of Workforce Educ. v. King, 336 Ark. 409,985 S.W.2d 731 (1999), the Arkansas Supreme Court reaffirmed the principle that "the General Assembly has power to name persons to execute the laws it passes." 336 Ark. at 417 (citing Fulkerson v. Refunding Board ofArkansas, 201 Ark. 957, 147 S.W.2d 980 (1941)). The Court had previously, in Clinton v. Clinton, 305 Ark. 585, 588, 810 S.W.2d 923
(1991), observed that "[u]nlike the federal constitution, there is no general appointment power in the state constitution authorizing the chief executive to make appointments to boards and commissions." The Court in Clinton also noted that "[e]arly on we held that there was no inherent power in the Governor under the state constitution to make appointments to boards and commissions, and we affirm that holding today." Id., citing Cox v. State, 72 Ark. 94, 78 S.W. 756 (1904).
The act at issue in Cox related to the State Capitol Commission, consisting of five members to be selected by the House and Senate in the manner provided in the act. 72 Ark. at 95. The Governor, believing that the legislature had no power to select the commissioners, made his own appointments. Id. at 97. In upholding the legislature's power to make the appointments, the court rejected the argument that the Governor had the constitutional power to appoint the members of such a board, to wit, "a board created for a special purpose, the members of which are not elective, and whose terms and offices will both expire with the completion of the work for which the board was created." Id. at 100. According to the court: *Page 5 
 As we see it, there is nothing in the constitution which forbids that the members of such a board shall be selected by the legislature. The method of selecting the members of such boards is a matter to be determined by the legislature, which can leave it to the Governor to make appointments, or can, if deemed safe, make them itself.
Id.
Cox and its progeny appear to resolve the concern whether the grant of appointive authority to the legislative branch is alone fatal to HB 1427. I note that this is in stark contrast to a number of states that identify the power of appointment as a power residing exclusively in the executive department. See, e.g., Opinion of the Justices to the House ofRepresentatives, 365 Mass. 639, 643, 309 N.E.2d 476 (1974) ("The creation of a public office is a legislative function, but the appointment of a particular person to an office is the function of the executive department."); Legislative Research Commission v.Prather, 664 S.W.2d 907, 922 (Ky. 1984) ("The appointment of officers is intrinsically an administrative or executive act . . . [,]" quotingSiber v. Garrett, 197 Ky. 17, 246 S.W. 455 (1922)); Rampton v.Barlow, 464 P.2d 378, 382 (Utah 1970) ("There is some authority holding that the legislative body may reserve unto itself the power to appoint [footnote omitted]. However, we think better reasoning avoids such a holding."); Common Cause, Inc., v. State, 691 N.E.2d 1358, 1360 at n. 3 ("[T]he power to appoint to office is an executive function, but may be exercised by the legislature or the courts as an incident of the principal power . . . [,]" quoting State ex rel. Yancey v. Hyde, 22 N.E. 644, 648 (1889)); State ex rel. West Virginia Citizens Action Group v.West Virginia Economic Development Grant Committee (discussing appointments provision of the West Virginia Constitution, W.Va. Const. art. VII, § 8, which vests the power of appointment in the Governor).
SEPARATION OF POWERS
Although the aforementioned Arkansas cases stand for the proposition that the appointment power is not an inherent executive power in Arkansas, it should be recognized that there nevertheless may be limits on legislative enactments that authorize the legislature itself to appoint executive officers. The most apparent potential limit in this regard emanates from the so-called "separation of powers" doctrine. The Arkansas Constitution contains an express "separation of powers" doctrine as follows: *Page 6 
 1. Departments of government.
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 2. Separation of departments.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
Ark. Const., Art. IV.
The law of Arkansas requires a "strict" application of the doctrine.See Spradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684
(1993), citing Oates v. Rogers, 201 Ark. 346, 144 S.W.2d 437 (1940).See also Spradlin v. Arkansas Ethics Commission: A Hard-Line Approach toSeparation of Powers, 48 Ark. L. Rev. 755 (1995). It has been stated that the doctrine is necessary to preserve the critical system of "checks and balances" built into our form of government. Streett v.Roberts, 258 Ark. 839, 529 S.W.2d 343 (1975) (Byrd, J. concurring). This office has also opined that:
 A natural incident of an explicit separation of powers has been to require a more marked separation of powers with no allowance for overlap or encroachment of one branch over another.
Ark. Op. Att'y Gen. 81-70 at 4.
Let me be clear on this point: The legislature can have no role in the implementation of the laws it enacts. As stated by the Arkansas Supreme Court:
 The separation-of-powers provisions in Article 4
of the Arkansas Constitution establish that the legislative power is to make laws but not enforce them. See, e.g., Clinton v. Clinton, 305 Ark. 585, *Page 7 810 S.W.2d 923 (1991), quoting Springer v. Philippine Islands, 277 U.S. 189 (1928). In short, the execution of our state laws is simply beyond the ken of legislative power, and our State Constitution makes this abundantly clear.
King, supra, 336 Ark. at 420.
Additionally, and of particular relevance to HB 1427, the expenditure or distribution of appropriated funds is generally an executive power or prerogative. See Chaffin v. Ark. Game Fish Comm'n, 296 Ark. 431,757 S.W.2d 950 (1988) (Legislative Council's practice of giving "review and advice" on professional and consultant services contracts of executive agencies held unconstitutional under the separation of powers doctrine);King, supra, 336 Ark. at 417 (service of legislator on a legislatively created board held unconstitutional, in part because the power to "manage, control and supervise a considerable amount of state property, assets, and funds" is a power that is "reserved to the executive branch of state government," quoting Starnes v. Sadler, 237 Ark. 325,372 S.W.2d 585 (1963)). See also McInnish v. Riley, 925 So.2d 174 (Ala. 2005) (the "exercise [of] discretion in determining when and how to distribute funds" is an "executive" function); Frank H. Easterbrook,"Success" and the Judicial Power, 65 Ind. L.J. 277, 281 (1990) ("[H]anding out public money is a classically executive function.");State ex rel. Schneider v. Bennett, 219 Kan. 285, 301, 547 P.2d 786
(1976) ("[T]he activity of spending money is essentially an executive task."); "Alexander et al. v. State, 441 So. 2d 1329, 1341(Miss. 1983) ("Once taxes have been levied and appropriation made, the legislative prerogative ends and executive responsibility begins. . . .");State ex rel. McLeod, Atty. Gen. v. McInn[i]s et al., 278 S.C. 307, 317,295 S.E.2d 633 (1982) ("[A]dministration of appropriations . . . is the function of the executive department."); Anderson v. Lamm,195 Colo. 437, 477, 579 P.2d 620 (1978) ("[T]he requirement for Joint Budget Committee approval unconstitutionally infringes upon the executive's power to administer appropriated funds.").
Accordingly, while the legislature clearly possesses the authority and responsibility to appropriate state funds and to designate the purpose(s) for which such funds may be expended, it is equally clear the legislature may not undertake to administer an appropriation or otherwise "manage, control and supervise" state funds. Starnes,supra, 237 Ark. at 330. It is "beyond the power of the General Assembly to confer [such] executive powers upon its members." King, supra, *Page 8 336 Ark. at 417. Bearing on this question, in my opinion, is the Arkansas Supreme Court's sensitivity to the "subtle yet palpable impact that intrusion by the legislative branch into the affairs of a state agency can have." Id. at 419, citing Chaffin. Further insight into the Court's view of this matter can be gleaned from its recounting ofChaffin:
 In Chaffin, the General Assembly had passed an act giving the Legislative Council the power to review and advise on all professional or consultant contracts in amounts of more than $ 5,000 before a state agency could enter into the contract. The history of the act showed that no contracts had been approved when the Legislative Council had voiced its disapproval, even though the act was couched in terms of the Council's merely giving its advice on the contracts. We noted in our opinion that it was unreasonable to expect that a state agency would defy the will of an arm of the General Assembly which had the power to undermine its very existence. We viewed the legislative act giving the Legislative Council this power as an encroachment and remarked specifically that a `subtle coercion exercised by a powerful branch of government can effectively tie the hands of a coordinate branch.' Chaffin, 296 Ark. at 444, 757 S.W.2d at 957.
Id.
The Court had previously observed the following in Chaffin:
 An unconstitutional encroachment may not always take the form of outright invasion. A subtle coercion exercised by a powerful branch of government can effectively tie the hands of a coordinate branch. The executive authority should be free, not only from blatant usurpation of its powers, but from paralyzing interference as well. The legislature cannot hold the executive branch hostage to its will. While it can and should hold hearings and investigate at length the performance of state agencies, it cannot intrude on the prerogatives of the executive branch of government.
296 Ark. at 444. *Page 9 
It is apparent from these excerpts that the Court is vigilant in adhering to a strict separation of powers between the branches. Specifically, it is keenly aware of the legislature's potential encroachment of executive powers through reserved supervisory powers, whether reserved directly or indirectly. In my opinion, any suggestion of such reserved authority by the legislature will be met with skepticism by the Court. With regard, specifically, to HB 1427, as suggested above, I believe it reasonably follows from Cox,supra, and the Court's subsequent affirmation of that case, that the Court does not view the authority to appoint a person to an executive office as the constitutional equivalent of the authority to exercise the executive functions of that office. However, the inquiry does not necessarily end there. In my opinion, the question must be whether HB 1427 considered as a whole evidences encroachment of executive powers. This requires consideration of other provisions of the bill which, when viewed together with the legislative appointments, raise separation of powers concerns, in my view.
I am referring in particular to: 1) the provision for two-year terms, which are not staggered, beginning on January 1 of odd-numbered years, i.e., legislative session years (A.C.A. § 15-13-104(b) and (e)); 2) the requirement that grant applications must be filed by March 23 of odd-numbered years, and that all grants must be awarded by April 10 of the odd-numbered years (id. at-106(b) and-107(b)); 3) the filling of vacancies by the legislator who made the appointment (id. at-104(b)(2)). The most salient fact regarding these provisions, in my view, is that they ensure all grant applications will be received, reviewed, and acted on during a legislative session, and in relatively short order following the appointment of the Commission. This alone does not cause me to state that the bill is unconstitutional on its face. Our Court has not addressed an issue of this precise nature. Indeed, as one of my predecessors had occasion to observe, "Arkansas case law is sparse on the question of encroachment of executive powers." Ark. Op. Att'y Gen. No. 91-020. Nor am I suggesting any legislative motive or intent to encroach upon or interfere with the Commission through these provisions. However, I must note the potential coercive influence accorded by HB 1427 as it pertains to the functioning of the Commission.
When making this observation, I should also point out that according to my review of cases from other jurisdictions that have addressed the matter of legislative appointments to executive positions, courts have been influenced by the presence, or absence, of certain "safeguards" or "restraints" on legislative control, which are viewed as ensuring that that there is no interference with or control of legislatively *Page 10 
appointed members in the performance of their executive duties. Such safeguards include: 1) staggered terms and civil service, see State Through Bd. ofEthics v. Green, 566 So.2d 623, 625 (La. 1990) (finding these factors to be "significant restraints on legislative control over the actions of the Board [of Ethics for Elected Officials]," four members of which are appointed by the legislature); 2) gubernatorial appointments, see In theMatter of the Application of the Okla. Dept. of Transp., 82 P.3d 1000,1004-05 (Okla. 2003) (noting that while it could be argued that the President Pro Tem of the Senate and the Speaker of the House "can exert control over the nonlegislative persons they appoint as members of the Council [on Bond Oversight] and thus indirectly over the Council itself[,]" the Governor appointed a majority of the Council, and therefore "[t]he power of [bond] approval remains in the executive department.); accord Parcell v. State, 620 P.2d 834, 837 (Kan. 1980) (stating "[w]e are convinced that the legislature's control of the [Governmental Ethics] Commission is not coercive[,]" after noting the gubernatorial appointment of five members); Green, supra,566 So.2d at 626
("Of course, the fact of original appointment may suggest the existence of some influence by the Legislature over the appointees, but even this possibility of control is dissipated by the spreading of the appointive powers among the Governor, the Senate and the House of Representatives."); 3) longer office tenure, see Marine Forests Societyv. California Coastal Commission, 113 P.3d 1062, 1090 (Calif. 2005) (concluding that the legislature's appointment of a majority of Commission did not violate separation of powers, in part because the appointees served four-year terms, which the court found "significantly reduces the potential control that the legislative appointing authorities may have over their appointees.").
The key focus in each of these cases is the degree of control, or potential control, over the appointees as reflected by the particular statutory scheme under review. The above features allayed the courts' separation of powers concerns. While I am not prepared to opine that the absence of these features renders HB 1427 unconstitutional, incorporating such provisions into the bill would significantly reduce the temptation of the legislature to exert undue influence, and would demonstrate to a reviewing court that the General Assembly does not intend to surreptitiously control the workings of the Commission. I should also note that in the absence of a facial challenge based on separation of powers, resolution of that issue may depend upon the bill's practical result, as shown by actual experience over time. In the words of the Arkansas Supreme Court, "the proof of the pudding is in the eating." Chaffin, supra, 296 Ark. at 443. In this case, the "eating" will be *Page 11 
how the legislature treats the Commission, the precise question being whether there has been any coercive influence. In this regard, I must caution that any suggestion that the Commission has not been afforded substantial independence will, in my opinion, likely sound HB 1427's death knell. The legislature must, in my opinion, be vigilant not to in any way "diminish" the Commission's powers or authorize an "overruling influence," see Oates, supra, 201 Ark. at 339, or "intrude on the prerogatives" of these appointees, see Chaffin, supra,296 Ark. at 444.
DELEGATION
As a final matter in addressing the constitutionality of HB 1427, I have considered whether the bill provides the necessary guidance to the Commission to withstand an allegation of an unconstitutional delegation of legislative authority. See generally Fulkerson v. Refunding Board ofArkansas, supra. While it is clear from the above discussion that the legislature cannot direct the Commission in the performance of its duties, nor can the legislature abdicate its exclusive power to legislate. The prohibition against a delegation of legislative power is a necessary outgrowth of the fundamental theory of separation of governmental functions. 16 Am. Jur. 2d Constitutional Law § 335 (1979). "The power to declare whether or not there shall be a law, to determine the general purpose or policy to be achieved by the law and to fix the limits of its operation cannot be delegated by the legislature. . . ." 16 C.J.S. Constitutional Law § 137.
In my opinion, no such delegation has occurred under HB 1427. It is well-established that "although the General Assembly cannot delegate its power to make a law, it can make a law and prescribe the condition upon which it may become operative." Leathers v. Gulf Rice Arkansas,Inc., 338 Ark. 425, 4311, 994 S.W.2d 481 (1999); accord Swanberg v.Tart, 300 Ark. 304, 778 S.W.2d 931 (1989). In other words, the legislature can delegate to an agency the power to determine the facts and circumstances upon which a law may operate. Campbell v. ArkansasState Hospital, 228 Ark. 205, 306 S.W.2d 313 (1957); Hogue v. HousingAuthority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49 (1940).See also McArthur v. Smallwood, 225 Ark. 328, 331, 281 S.W.2d 428 (1955) (stating that "general provisions may be set forth with power given to those who are to act under such general provisions to complete the details." As stated in Fulkerson, supra, 201 Ark. at 964-65: *Page 12 
 The state must act through its officers and agents. It may not delegate to either power to enact laws, but it may, by laws properly enacted, direct its officers and agents to perform certain duties . . .; . . . it is not a delegation of legislative authority to permit the use of discretion in the discharge of the duties which the law making body has enacted and imposed.
Applying these principles, I conclude that the powers delegated under HB 1427 are not purely legislative in nature, but rather are discretionary authority to carry out the defined purpose of the act: "[T]o assist the development of local communities through a program of state grants. . . ." A.C.A. § 15-13-102; "[T]o improve services to citizens and to develop and improve the community[.]" HB 1427 (Emergency Clause). The legislature has set forth guidelines and standards to guide the Commission in the exercise of its judgment or discretion in administering the act. It has identified certain types of projects (see n. 2, supra), and it has guided the Commission in setting forth the following matters to be considered when selecting grant recipients: "(A) The purpose of the project; (B) The benefit to the community; (C) The need for assistance; (D) The ability of the eligible entity to address the need with other funds and with volunteers; (E) The population of the city or county where the grant is to be used; and (F) How long the need has existed[.]" A.C.A. § 15-13-107(c). In my opinion, the necessary legislative guidance is provided in the cumulative provisions of the bill.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
MB:EAW/cyh
[1] Act 1898 of 2005 appropriated $400,000 "[f]or state assistance to the City of Bigelow, Arkansas for infrastructure, sewer and streets. . . ." Acts 2005, No. 1898, § 1. Amendment 14 states that "[t]he General Assembly shall not pass any local or special act." Ark. Const. amend.14. Regarding Amendment 14, the Court noted: "We have `differentiated that `special' legislation arbitrarily separates some person, place, or thing, while `local' legislation arbitrarily applies to one geographic division of the state to the exclusion of the rest of the state.'"Wilson, supra, at 9, quoting McCutchen v. Huckabee, 328 Ark. 202, 208,943 S.W.2d 225. Given that Act 1898 applied only to the City of Bigelow, the Court identified the "relevant inquiry" as "whether there exists a rational and legitimate reason for applying this act to only one community in this state." Id. at 11. After considering possible justifications for the appropriation, the Court concluded that "no reason rationally related to a legitimate state purpose has been provided this court for singling out Bigelow for special treatment."Id. at 12-13.
[2] The bill specifies "the following types of projects" for grants: "(A) City Improvements; (B) Assistance to colleges or other educational institutions; (C) County Improvements; (D) Assistance to fair associations; (E) Assistance to fire departments; (F) Assistance to health centers or hospitals; (G) Assistance to libraries; (H) Assistance to museums; or (I) Assistance to state agencies; or . . . A project that is not listed . . . but the Arkansas Community Assistance Commission determines that the grant application serves a state purpose." A.C.A. § 15-13-106(d).
[3] I note that HB 1427 is not an appropriation act, and that a constitutionally sound appropriation is a prerequisite to the distribution of any grant funds under the bill. See Ark. Const. art. 5, § 29 ("No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years."); Ark. Const. art. 16, § 12 ("No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."). Decisions of the Arkansas Supreme Court indicate that an appropriation meets the requisite "specificity" if it is specific as to the purpose for which it is to be used, the time of payment and as to the fund out of which it shall be paid. State Game Fish Commission v.Hornaday, 219 Ark. 184, 242 S.W.2d 342 (1951) and Scougale v. Page,194 Ark. 280, 106 S.W.2d 1023 (1937), each citing Grable v. Blackwood,180 Ark. 311, 22 S.W.2d 41(1929) (overruled in part on other grounds inState Highway Commission v. Nelson, 191 Ark. 629, 87 S.W.2d 394
(1935)).