SIMPSON v. TEFTLER.

Opinion delivered April 16, 1928.

1. ELECTIONS—TIME FOR HOLDING.—When the Legislature names the day on which an election shall be held, holding the election on any other day is unauthorized, and the election so held is void.

2. ELECTIONS—AUTHORITY OF LEGISLATURE.—The Legislature alone has authority to provide for an election, and any election held without authority is void.

3. ELECTIONS—TIME OF HOLDING.—Where the time of holding an election is fixed by statute, the election officials have no authority to change the date, such provision being mandatory.

4. ELECTIONS—SUBMISSION OF MEASURE TO PEOPLE.—Acts 1925, p. 324, providing for a stock law effective from the date of the order of Monroe County Court after approval by a majority of the voting electors, violates the provision of the constitutional amendment for 1920, that no measure shall be submitted to the people by the General Assembly except proposed constitutional amendments.

5. STATUTES—CURATIVE ACTS.—The Monroe County Stock Law, Acts 1925, p. 324, being a local law, an election held thereunder on a different date from that specified therein was not validated by Acts 1927, p. 227, validating irregular "no-fence" law elections, since the Legislature, being prohibited from passing local acts by constitutional amendment (Acts 1927, p. 1215), cannot make effective a void local act theretofore passed.

Appeal from Monroe Circuit Court; *W. J. Waggoner,* Judge; reversed.

*X. O. Pindall, Peyton D. Moncrief, A. G. Meehan* and *John W. Moncrief,* for appellant.

*S. S. Jefferies,* for appellee.

MEHAFFY, J. In 1925 the Legislature passed an act to provide a stock law and to regulate the operations of the same in Monroe County, Arkansas. Section 1 provides for the establishment of the district, embracing the whole of Monroe County, and § 2 makes it unlawful for the owner or manager of the stock described to permit said stock to run at large beyond the limits of his own land or lands leased, occupied or controlled by him within the territory of Monroe County. Section 3 provides for impounding the stock, giving notice, and for the sale of the property and for the charges for keeping. It also provides, in addition to the charges for keeping the stock, that the owner be liable for all damages committed by the stock while running at large. Section 4 provides that the owner permitting the stock to run at large shall be guilty of a misdemeanor, etc. Section 6 is as follows:

"On Wednesday, the first day of April, 1925, there shall be held an election at the usual voting places in the various townships in Monroe County, at which election there shall be submitted to the landowners of Monroe County the question of 'For stock law' and 'Against stock law,' at which election persons shall be eligible to vote as hereinafter próvided."

The act then provides for the sheriff giving notice of the election, and also provides for the election commissioners to appoint judges, and the judges are required to take the oath as in the general election laws. The act also provides that the election commissioners, not later than 10 days after the election, shall proceed to ascertain and declare the result of said election, and within 15 days after the date of the election shall file in the office of the county clerk of said county a certificate, and in the event a majority of the voters vote

for the stock law, the county court of Monroe County shall, on the first day of its July term, 1925, enter an order upon the county court records of said county, declaring the act adopted and in full force and effect. And it is further provided that this act shall, from and after the date of said order of said county court, to-wit, the first Monday in July, 1925, take effect and be in full force and effect.

There was no emergency clause, and the act could not take effect until 90 days after the adjournment of the Legislature, which was the 12th day of March, 1925. No election was held on April 1, 1925, but an election was held on the 11th day of August, 1925, and the county court acted upon the report of the commissioners on the 5th day of October, 1925.

The appellant, whose hogs had been impounded, brought a suit in replevin to recover four head of hogs that had been impounded. There was a verdict against appellant, motion for new trial was filed and overruled, and the appeal is prosecuted to this court to reverse said judgment.

There was no effort to enforce the stock law in Monroe County until after passage of act 84 in 1927. Act 84 is an act to validate special elections held for creation of no-fence laws, and it provides that all elections heretofore held in the State of Arkansas where the question of the creation of no-fence law or stock law has been submitted to the vote of either the electors of said no-fence district or the landowners of said district, as prescribed by said acts, where the majority of the voters in said elections voted in favor of said law, notwithstanding the fact that said elections so held were irregular by reason of same being held on a different day from the day named in said acts or other causes, that said no-fence law or stock law be, and the same are hereby declared to be, valid, effective and binding, and shall be in force and effect from and after the

passage of this act as if said elections were held in strict conformity with the law creating the districts.

The first question to be determined is whether the election held on August 11, 1925, was void, the act requiring the election to be held on the first day of April, 1925.

When the Legislature fixes the time, names the day on which an election shall be held, said election must be held on that day. The holding of an election on any day other than that named by the Legislature is not authorized, and the election is void.

"For the purpose of organizing the system of government hereby established and putting the same into operation in the first instance, the selectmen of the town of Fall River, for the time being, shall, within 30 days after the acceptance of this act, issue their warrants, seven days at least previous to the day so appointed for calling a meeting of said citizens, at such place and hour as they may deem expedient, for the purpose of choosing a warden, clerk, and inspectors for each ward, and all other officers whose election is provided for in the preceding sections of this act. The selectmen issued their warrant, warning the electors to hold their first meeting, under the statute, for the choice of ward and city officers, and for the election of a county treasurer. It was held by the Supreme Court that, as to the office of county treasurer, the election was illegal and void." Paine on Elections, 268.

"But statutes prescribing the days for holding an election are generally mandatory, and elections held on different days will be void. * * * Where it is provided by law that an election shall be held within 50 days after the presentation of the petition therefor, an election held after the expiration of the 50 days will be void." Paine on Elections, § 310.

"It is, of course, essential to the validity of an election that it be held at the time and in the place provided by law." McCrary on Elections, 4th edition, 153.

Again, it is said in § 176 of McCrary on Elections: "It must be conceded by all that time and place are of

the substance of every election, while many provisions which appertain to the manner of conducting an election may be directory only."

"Those provisions of a statute which affect the time and place of the election and the legal qualifications of the electors are generally of the substance of the election, while those touching the recording and manner of conducting the mere details of the election are directory." McCrary on Elections, 228.

This court said, in deciding when a law went into effect:

"No public act shall take effect, or be in force, until ninety days from the expiration of the session at which the same was passed; and consequently the act did not take effect, and was not in force, until ninety days after the 10th of April, 1869; so that, in fact, on the 3rd of November, 1868, ten months before the act took effect, when, it is claimed, an election was held and a majority vote taken in favor of railroads, the act authorizing the same was not in force; and if not, then the election was held without authority of law, and was void." *State* v. *Little Rock, Mississippi River & Texas Ry. Co.,* 31 Ark. 701.

The Legislature alone had authority to provide for an election, and any election held without authority is a nullity.

"It is claimed by plaintiff that the ordinance under question by its own terms could not have taken effect until the 11th day of March, and that no step could have been legal under it until that time. That by its terms the election, even if legal, could not be held until 30 days after the 11th of March, or until the 12th of April, instead of the second of April, as the day for election; it was an impossibility which could not be accomplished, and therefore any action held under it was void." *Hensley* v. *Hamilton,* 2 Ohio Circuit Decisions, 114.

"When therefore the day of election for town officers was changed by law, we are of opinion the law

necessarily changed the day for the election of trustees. The change followed as a logical result. The provisions of acts 1867 and 1869, when considered with the Constitution and the township organization law, clearly lead to this conclusion." *Kelley* v. *Cabu*, 112 Ill. 23, 1 N. E. 167.

In the above case the town had held two elections, but by the general law it was provided that the election for officers contemplated by this act shall be held on the second Tuesday in April. The important question in the case was whether the election held on the first Tuesday in April was held on the day provided by law. Prior to the act under discussion by the court there had not been uniformity, elections in some places being held on one day and others on a different day, but the court held the day named for the election was the only day on which an election could be held.

The Kansas court said:

"And, having fixed the time within which such an election must be held, it seems to us it intended that compliance with this requirement should be essential to its validity. It may perhaps be worthy of notice, though only a slight circumstance, that the requirement of notice and the limitation of 50 days are both in the same section and couched in the same terms of obligation. The publication of notice comes plainly within the decision in 1 Kansas 273, as essential to the validity of the election. Does it not seem reasonable that the Legislature intended that both should be essential? We are led to the conclusion that the district court erred in its ruling, and the case will be remanded with instructions to reverse the order refusing a temporary injunction, and proceed further in accordance with the views herein expressed." *Gossard* v. *Vaught*, 10 Kansas 162.

In Missouri an election was held to remove a county seat, and the order for an election was made upon the 5th day of April, calling the election for the 14th day of June following, a space of 70 days. The court said:

"The commissioners had the power, upon the establishment of the fact that three-fifths of the legal voters of the county so petitioned, to order an election to decide the matter of the removal of the county seat from one point and its location at another; but such election they must cause to be held within fifty days from the establishment of such fact, and in time to afford thirty days notice of the election. The right to order being thus circumscribed, the board could only so proceed, unless, as is suggested, the time prescribed was simply in the nature of a direction, and not a mandate. As has been frequently decided by this court, when the language of a statute is plain, its intention must be deduced from such language, and the court has no right to go beyond it. * * * So here the commissioners, 'within fifty days thereafter shall cause an election to be held.' It would be straining the meaning of words to say that the natural, ordinary interpretation of such language was that, sometime within fifty days, the commissioners should order an election to be held at any future time their discretion or caprice might dictate; and yet this is the conclusion urged by counsel for defendants, in substance. He claims that, jurisdiction once acquired by the presentation of the petition, the subsequent order in the case at bar was what the statute contemplated, or at most an irregularity. * * * When the Legislature has said to this board of special limited powers, You shall cause an election to be held within a certain time, who shall say that the matter of time is immaterial? The intention may have been to protect the petitioners; for, if the construction urged be adopted, the board could place the election at such a distance of time as to render the order a practical nullity; and there would then be no redress, as that would be simply an error under the regular pursuit of authority, not subject to review by this or any other court; or the intention may have been something other, or for multiple purposes; but there stands the plain language, and it should not be frittered away." *State* v. *McGinnis,* 6 Nev. 104.

"After the passage of this act, the general election, by the new Constitution, was changed to November; and it is now insisted that the true interpretation of the act fixed this election to be holden annually, at a general election. We put a different construction upon the provision. The word 'general' was merely descriptive of the election, the time of holding which was fixed on the 'first Monday in August,' 1847, 'and every year thereafter,' which would fall again on the first Monday of August succeeding. Had it been the intention of the Legislature to make the 'general' election day the time, instead of the 'first Monday in August,' the date of the month and the day of the week may well have been omitted, without leaving the least ambiguity, in case of any change in the laws; or the same thing would have been accomplished by repeating the terms, and at the 'general' election 'every year thereafter.' * * * Much additional technical verbiage might have been added, the proofs could not have been enlarged, nor essential facts multiplied. He would have a right to show that the election had not been held by persons authorized to hold it, or that proper returns had not been made, evidencing and declaring that election." *The People ex rel. Dixon* v. *Shaw,* 14 Illinois Rep. 476.

"By the Constitution (art. 10, § 2), the power of fixing the times for the election of county officers is vested in the Legislature. When a time has been so fixed, any election held at a different time is unauthorized and void. The act of April 18, 1870, having repealed all prior laws on the subject, its first section contains the only provision fixing the time for the election of county auditors. The single question in the case therefore is, what time does that section fix for the election? * * * They have plainly fixed the election on the second Tuesday of October, 1871. It is therefore useless, and it would be going out of the case, and in effect deciding the rights of parties not before us, to inquire whether the Legislature had the constitutional power to pro-

long the old terms of office. Whether they had or had
not this power, they have fixed the election for October,
1871. And we can see no force or logic in the argument
by which it is attempted, first, to strike from the sec-
tion the words of the proviso prolonging the term, and
then, by a literal rendering of the remaining words of
the section, by themselves considered, to determine the
time fixed for the election. This would be to mutilate
the section and garble its meaning. The legislative
intention must not be confounded with their power to
carry that intention into effect. To refuse to give force
and vitality to a provision of law is one thing, and to
refuse to read it is a very different thing. * * * The mean-
ing of the Legislature must be gathered from all they
have said, as well from that which is ineffective for
want of power as from that which is authorized by law.
Read in this way, the meaning of the section admits of
no controversy. It fixes the election on the second Tues-
day of October next preceding the expiration of the
term as so prolonged, which will be the second Tues-
day in October, 1871." *State* v. *Dombaugh,* 20 Ohio 167.

The act in question fixes the date of the election
on the first Monday in April. The meaning of this
admits of no controversy. The Legislature had the
power, in fact it was the only branch of the government
that did have the power, to fix the date, and it fixed
the date so that there can be no question about it. And
elections must be held on the day fixed by law, and
those elections held at other times, at times not fixed
by law, are void. The Legislature fixes the time for the
election of State and county officers. The Legislature
only can change that time. The law fixes the time for
primary election in Arkansas. If no election was held
on that day, would it be contended that the sheriff could
give notice of an election three of four months there-
after, or any time thereafter?

This court said, in a case in replevin for posses-
sion of hogs: "The point in the case is whether the

statute in question was ever put in force in the territory where appellant's hogs were found running at large.

"The act provides for submission to the voters, either at a special or general election, of the question whether or not it shall be put in force in the given territory, and that, if it shall appear that a majority of the votes cast on the question are in favor of the law, it shall be the duty of the county court or county judge to make and enter an order declaring the law to be in force in the territory. * * * The question of adopting the statute was submitted to the voters of Hempstead County at the general election in 1902, again at the general election in September, 1904, and at the presidential election in November, 1902, but did not receive a majority of the votes on the question at either of these elections. It was again voted on at the general election in 1906, and received a majority of the votes, whereupon the county judge made an order declaring the statute to be in force in the territory named.

"It seems clear to us that the statute contemplated a submission of the question to the voters at a special election to be called by the county judge, or, in the event of his failure to call the election, that it be submitted finally at the next succeeding general election for State and county officers. The language of the statute does not reasonably admit of any other construction. It says that, "in the event such special election be not ordered and held prior to the next general election for State and county officers, the question shall then be submitted to the electors." * * * Therefore it cannot be presumed that the Legislature intended that the question might be submitted every time and as often as the election commissioners might see fit to print the question on the tickets at a general election.

"It was doubtless within the power of the Legislature to provide for resubmission of the question of adoption of the statute by the voters, but a considera-

tion of the language of the statute convinces us that such was not the intention.'' *Hood* v. *Bell,* 86 Ark. 366, 111 S. W. 801.

''But the specification of time in a statute may be imperative and may operate as a limitation upon the power of those who are to act under it. This will depend upon the intention of the Legislature; and an intention to make time of the essence of the thing to be done may be disclosed either by the express language of the law or by necessary implications from its terms.'' Black on Interpretation of Laws, 2 edition, 547.

It may be conceded that the authorities are not in entire harmony on the question whether the provision in the statute fixing a day for an election is mandatory or directory. Some courts have held that it is directory.

Appellee calls attention to an Oklahoma case which holds that the provision in the statute is directory. In that case, however, it was impossible to hold the election on the day fixed by the statute. *Board of Directors of School District 27 of Okla. County* v. *Board of Excise of Okla. County,* 31 Okla. 553, 122 Pac. 520.

Appellee also calls attention to the same case in Annotated Cases 1913E, 639, and calls attention to the note dealing with various phases of elections held on the wrong date. But the notes referred to state that the statutory provision as to the time for holding an election is ordinarily mandatory.

Appellee also calls attention to 9 R. C. L. 998, and quotes from § 19, on page 998. But the section quoted from begins with the announcement of the general rule as follows: ''It may be stated as a general rule that the election of a person to an office at a time not authorized by law is void.''

The section also contains the following: ''From these decisions the rule may be deduced that, where the date of the election is not left to the determination of the officials, but is unequivocally fixed by statute, the election officials have no authority to change the date.

In other words, such a statutory provision is ordinarily to be regarded as mandatory.''

The same section also contains the following statement: ''And so it has been frequently held that, where an election is not held within the time limited, it cannot be held afterwards, and, if so held, is void.''

While there is authority for holding the statute fixing the day of election as directory, the weight of authority, and, we think, the better rule, is that such provisions are mandatory.

Another question discussed by counsel is whether the Legislature had authority to submit the question to the people. The constitutional amendment adopted in 1920, before the passage of the act, contains, among other things, the following: ''But no measure shall be submitted to the people by the General Assembly except a proposed constitutional amendment or amendments as provided for in this Constitution.''

Appellee contends that the Legislature had authority, and states that the identical question was brought before this court in *Lemaire* v. *Henderson*, 174 Ark. 936, 298 S. W. 327. The court there construed the act of 1927, which provided for the establishment for consolidated school districts in counties having a population of 75,000 or more, etc. The court said in that case:

''The statute does not delegate legislative power, so long as it is complete in itself when it has passed the Legislature, even though it is left to a vote of the people when it shall come into operation. In the case at bar the law is complete in itself. It declares the result which may come from holding the election under its provisions. It is simply a case where the Legislature passed a complete statute, but made its enforcement depend upon the will of the people, to be expressed at an election called under the provisions of the act for that purpose.''

That act, however, provided that it should take effect and be in force from and after its passage. It

was a complete act, and went into effect without regard to any election, but it simply provided that, upon the petition of not less than 100 qualified electors of any one county, the board might call an election of all the legal voters in the county. And if a majority voted for the county school district, the county board of education should then enter an order, etc.

But act No. 108 of 1925, providing for a stock law in Monroe County, provides: "In the event the majority of the voters voting at said election shall vote 'For stock law,' as shown by said certificates of said election commissioners, the county court of Monroe County shall, on the first day of its July term, 1925, enter an order upon the county court records of said county, declaring this act adopted and in full force and effect, and this act shall, from and after the date of said order of said county court, to-wit, the first Monday in July, 1925, take effect and be in full force and effect, and all laws and parts of laws in conflict herewith be and the same are hereby repealed."

This act did not go into effect merely by its passage by the Legislature, but it is expressly stated that it shall go into effect when a majority have voted for the law and the county court has made an order. That from and after that date it shall go into effect. This law violates that provision of the Constitution which says no measure shall be submitted to the people by the General Assembly except a proposed constitutional amendment or amendments as provided for in this Constitution.

The amendment also defines the word "measure" to mean any bill, law, resolution, ordinance, charter, constitutional amendment or legislative proposal or enactment of any character. Certainly that covers the bill submitted to the people of Monroe County. The Constitution prohibits the Legislature from submitting any measure. Here was a measure submitted to the people, a bill to become a law only when a majority of the people

had voted for it and there had been an order of the county court, as provided for in the act. The provision of the Constitution is plain and unambiguous, and that provision prohibits submitting measures like this to the people to become effective as a law only when adopted by the people. The law therefore never became effective, the election held at a time different from the date fixed by the Legislature was void, and the law itself a nullity. And the law of 1927 declaring elections under no-fence laws valid could not affect this election, if it was void.

"A curative statute is only intended to cure defects in the execution of a mortgage, and cannot, in the very nature of things, render valid an act which was absolutely void in the beginning. * * * The curative act in question did not purport to cure anything except defective instruments, and does not purport to render valid and effectual an act which had never been done." *Hall* v. *Mitchell,* 175 Ark. 641, 1 S. W. (2d.) 59.

Act 84 of 1927 was a curative act, and undertook to cure defects or cure acts that were irregular, but there is no irregularity about the proceedings with reference to the Monroe County stock law. The election was void, and the act therefore never became effective.

The 1927 act could not be effective for another reason. The amendment adopted at the general election October 5, 1926, provides:

"The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

The Legislature, under this amendment, could not pass a special act. And if a special act had been passed before the adoption of this amendment, but had not gone into effect, the act of 1927, undertaking to cure a defect, would, in effect, be passing a local act. If the election, held at the time it was, had been valid, then the act of 1927 would have been wholly unnecessary and would have had no effect at all. If the election was invalid, then the

law was void; and if the 1927 law was intended to render a local law valid, then it was in effect the passage of a local law, and this it could not do under the amendment to the Constitution above referred to. If the Legislature could not pass a local act it could not make effective a local act that was void. It could not do indirectly what the Constitution prohibits it from doing directly.

This case is reversed, and remanded with directions to enter a judgment for the plaintiff.