Phil STRATTON *v.* Sharon PRIEST, Secretary of State; Charlie
Cole Chaffin, Intervenor

96-1150                                                    932 S.W.2d 321

Supreme Court of Arkansas
Opinion delivered October 29, 1996

Appellant, *pro se.*

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., and *Wendy K. Michaelis*, Ass't Att'y Gen., for appellee.

*Boswell, Tucker, Brewster & Hicks*, by: *Ted Boswell*, for intervenor.

BRADLEY D. JESSON, Chief Justice. On July 15, 1996, Jim Guy Tucker resigned as Governor of the State of Arkansas. Lieutenant Governor Mike Huckabee became Governor, pursuant to Ark. Const., amend. 6, § 4. His succession left a vacancy in the office of Lieutenant Governor. On July 30, 1996, pursuant to Ark. Code Ann. § 7-7-105 (Repl. 1993), Governor Huckabee issued a proclamation calling for a special election to fill the vacancy. The election was called for November 5, 1996, the date already scheduled for the 1996 general election.

On August 26, 1996, the appellant filed a complaint in Pulaski County Chancery Court challenging the constitutionality of Ark. Code Ann. § 7-7-105. On September 9, 1996, he filed an amended complaint, seeking a declaration that the statute was in conflict with the Arkansas Constitution and maintaining that any funds spent on the special election would constitute an illegal exaction. He further prayed that the Secretary of State be enjoined from certifying any candidate for Lieutenant Governor on the November 5 election ballot. One of those candidates is Charlie Cole Chaffin, the intervenor in this case. The chancellor rejected the appellant's challenge and ruled that § 7-7-105 does not conflict with the Arkansas Constitution. We agree and affirm.[1]

The appellant contends that § 7-7-105 offends the "orderly succession in the executive branch" provided for in Ark. Const., art. 6, § 14, and Ark. Const., amend. 6, § 5. Article 6, § 14, is an original provision of our 1874 constitution. It required a special election to fill a vacancy in the office of Governor when the office was vacated with more than twelve months remaining in the Governor's term. No provision was made in the 1874 constitution for the office of Lieutenant Governor. Conflicting interpretations of

---

[1] The appellant filed his notice of appeal on September 26, 1996. The record was filed with this court the next day. We granted the appellant's motion for expedited consideration. Final briefs were filed on October 16, 1996.

Section 14 and other sections of Article 6 resulted in a gubernatorial succession crisis in the early part of this century. As a result, Amendment 6 was adopted by a vote of the people in 1914. Amendment 6 created the office of Lieutenant Governor and took up the matter of gubernatorial succession. *See Bryant v. English,* 311 Ark. 187, 843 S.W.2d 308 (1992), for a detailed rendition of the history of these constitutional provisions.

Section 5 of Amendment 6 is entitled "Qualifications and Duties of Lieutenant Governor — Succession to the Governorship." It reads as follows:

> The Lieutenant Governor shall possess the same qualifications of eligibility for the office as the Governor. He shall be President of the Senate, but shall have only a casting vote therein in case of a tie vote. If during a vacancy of the office of Governor, the Lieutenant Governor shall be impeached, displaced, resign, die, or become incapable of performing the duties of his office or be absent from the State, the President of the Senate shall act as Governor until the vacancy be filled or the disability shall cease; and if the President of the Senate for any of the above causes shall become incapable of performing the duties pertaining to the office of Governor, the Speaker of the Assembly shall act as Governor until the vacancy be filled or the disability shall cease.

The appellant argues that § 5 requires any vacancy in the office of Lieutenant Governor to be filled by succession, not by election. The appellant misunderstands the purpose and spirit of § 5. It addresses the subject of *gubernatorial succession*. It answers the question, "In case of a vacancy in the office of Governor, who shall be Governor?" The subject of succession to the office of Lieutenant Governor is not addressed.

Acts of the General Assembly are presumed to be constitutional and will only be struck down where there is a clear incompatibility between the act and the state constitution. *Clinton* v. *Clinton,* 305 Ark. 585, 810 S.W.2d 923 (1991). Neither art. 6, § 14, nor amend. 6, § 5, is concerned with filling vacancies in the office of Lieutenant Governor. Therefore, § 7-7-105 does not conflict with those provisions.

The only reference in the Arkansas Constitution to vacancies in the office of Lieutenant Governor is contained in

Amendment 29. That amendment provides for gubernatorial appointment to fill vacancies in most elected offices. However, it excepts from the Governor's appointment power vacancies in the offices of Lieutenant Governor, member of the General Assembly, and United States Congressional Representative. These are the very offices that are to be filled by special election under § 7-7-105. Thus, the Arkansas Constitution and § 7-7-105 exist in harmony.

■ The appellant also makes a rather offhand argument that § 7-7-105 is incompatible with § 3 of Amendment 6. He claims that the statute "attempts to nullify the provisions of Amendment 6, § 3, that require the Governor and Lieutenant Governor be elected at the same time in the same election." The appellant probably means to refer to § 2 of Amendment 6, which provides that the Lieutenant Governor "shall be chosen at the same time and for the same term" as the Governor. Section 2 addresses the ordinary situation in which an election is held at the end of the current officeholder's term. It does not contemplate the situation in which a vacancy in office must be filled. Thus, § 7-7-105 and § 2 do not conflict.

In light of our holding, the appellant's request for attorney fees pursuant to Ark. Code Ann. § 26-35-902 (Supp. 1995) need not be addressed.

Affirmed.

DUDLEY AND GLAZE, JJ., dissent.

ROAF, J., not participating.

TOM GLAZE, Justice. The simple answer to this election case is that the chancery court, deciding it below, did not have subject-matter jurisdiction. Therefore, this appeal should be dismissed. Someday in the not-too-distant future, this court will be forced to resolve the subject-matter-jurisdiction issues its more recent cases (including this case) have caused the bench and bar, when determining where to file election actions — in equity or at law.

First, I emphasize that this is an election case, not an illegal-exaction one, and that this court has clearly held that the *chancery court has no jurisdiction in matters pertaining to elections. State* v. *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989); *see also Curry* v. *Dawson*, 238 Ark. 310, 379 S.W.2d 287 (1964). Moreover, in *Foster* v. *Jefferson County Quorum Ct.*, 321 Ark.

105, 901 S.W.2d 809 (1995), this court, quoting from *Jackson* v. *Munson*, 288 Ark. 57, 701 S.W.2d 378 (1986), stated the following:

> While it is true we have been liberal in permitting illegal exaction suits, we have held that an illegal exaction complaint was not proper where exclusive jurisdiction of the *underlying matter* was conferred on the circuit rather than the chancery court. (Emphasis added.)

In the present case, the appellant's underlying action seeks declaratory relief holding the Governor's proclamation, calling a special election to fill the existing vacancy in the Office of Lieutenant Governor, to be unconstitutional. Assuming entitlement to such relief, his complaint requests that the Secretary of State be enjoined from certifying the votes cast in the candidates' race for that office.

In *Catlett* v. *Republican Party of Ark.*, 242 Ark. 283, 413 S.W.2d 651 (1967), this court clearly held that cases like the one before us must be filed in and decided by a court of law. *Catlett* has never been overruled. The *Catlett* court clearly enunciated the rule as follows:

> [C]ourts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases, the remedy, if any, must be sought in a court of law. *The extraordinary jurisdiction of courts of chancery can not, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office. Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held.* (Emphasis added.)

Here, appellant's suit is an attempt to restrain the holding and certifying of the election results in the Lieutenant Governor's race. As is clearly explained in *Catlett*, chancery court has no authority to restrain the holding of an election or control the conduct of an election. Consequently, the chancellor should have dismissed the appellant's complaint.

The appellant was well aware of his jurisdiction problem below after appellees filed a motion to dismiss appellant's complaint for want of equity jurisdiction. Consequently, he added language to his

complaint, alleging the Secretary of State's certification of election results would be an *ultra vires* act and therefore result in an illegal exaction of state funds. In adding this language, appellant seems to rely on our recent case of *Priest v. Polk*, 322 Ark. 673, 913 S.W.2d 902 (1995), a plurality decision, where the court said that the question of subject–matter jurisdiction is determined by the "characterization" of the case.

Appellant's argument simply ignores our *Foster* decision, which holds that an illegal exaction complaint is not proper where exclusive jurisdiction of the underlying matter is conferred in circuit court. It is important to note that, in *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169, this court not only emphasized Arkansas's case law establishing chancery court has no jurisdiction in election matters, but also this court sanctioned mandamus and declaratory relief as the proper methods of enforcing our state's election laws. Mandamus, of course, lies only in circuit court. Accordingly, appellant here should have filed his action in circuit court, asked that court to declare Arkansas's election law, Ark. Code Ann. § 7-7-105 (Repl. 1995), unconstitutional, and requested the Secretary of State be mandated to remove the Lieutenant Governor's race from the ballot or not certify the votes cast in that race.

In sum, our case law simply does not permit a plaintiff (appellant here) to "characterize" (or recharacterize, if you will) his underlying action to be an illegal exaction action when the core issue is enforcement of Arkansas's election laws, namely, whether § 7-7-105 is constitutional and, therefore, provides the people with the political right to vote for a Lieutenant Governor at a special election.

In a concurring opinion in *Polk*, I voiced my concern that subject–matter jurisdiction questions would continue to arise in the filing of these election statutory and constitutional matters unless this court clarifies for the bench and bar what is expected of them. In this regard, the court in my view should follow the clear dictates and principles set out in the *Curry, Foster, Craighead County,* and *Catlett* cases. The majority decision today simply ignores these cases.

I would dismiss this case for lack of subject–matter jurisdiction.

DUDLEY, J., joins this dissent.