The Honorable Mike Beebe Governor, State of Arkansas State Capitol, Suite 250 Little Rock, Arkansas 72201
Dear Governor Beebe:
You have requested my opinion on issues arising from the recent election for Arkansas State Representative for District 24. The Republican Party's general election nominee, Mr. Keith Crass, died after the ballot had been certified but before the general election. Pursuant to A.C.A. § 7-5-315(b)(1) (Supp. 2009), his name remained on the ballot;[1] and it is anticipated that the official election results will show that he won the election. The incumbent officeholder, Representative Rick Saunders, is currently serving the remainder of his third full two-year term as the elected representative of District 24. Under Amendment 73 to the Arkansas Constitution, he cannot be elected to a fourth two-year term in that office.
Against this background, you ask:
 1. Under the circumstances, may the Governor call a special election for the purpose of selecting a person to serve as Representative for District 24 in the upcoming session of the General Assembly? Or, pursuant to Article 19, Section 5 of the Constitution, does the incumbent officeholder `hold over' until a new representative can be selected at the next regularly-held general election (in November of 2012)? *Page 2 
 2. If the Governor may call a special election, may he issue a call for such an election immediately, or must the Governor wait until the conclusion of the incumbent officeholder's term (or some other time) to call for such an election?
 3. If the Governor may call such a special election, is such an election to be governed by the procedure outlined in Ark. Code Ann. § 7-7-105?
 4. If a special election cannot be held until sometime after the commencement of the next regular session of the General Assembly, does the incumbent "hold over" pursuant to Article 19, Section 5 of the Constitution until such time as a new representative is duly elected at the special election?
RESPONSE
In my opinion, the answers to parts one and two of your first question are "no" and "yes," respectively. If the incumbent State Representative for District 24 does not vacate the office, it is my opinion for the reasons explained below that no "vacancy" will arise under these fairly unique circumstances so as to authorize you to call for a special election pursuant to Ark. Const. art. 5, § 6 and A.C.A. § 7-7-105. It is therefore unnecessary to respond to your remaining questions.
It is of course well-established that an election held without authority is a nullity.[2] The relevant authority in this instance is Article 5, Section 6 of the Arkansas Constitution which, together with A.C.A. § 7-7-105 (Supp. 2009), authorizes the filling of vacancies in the Arkansas General Assembly by special election upon proclamation of the Governor.[3] The term "vacancies" is not defined by *Page 3 
Ark. Const. art. 5, § 6. But "vacancy in office" is defined as follows under A.C.A. § 7-1-101(31) (Supp. 2009):
 (A) `Vacancy in office' means the vacancy in an elective office created by death, resignation, or other good and legal cause arising subsequent to election to the office at a general or special election or arising subsequent to taking office and before the expiration of the term of office in those circumstances wherein the vacancy must be filled by a special election rather than by appointment.
 (B) The phrase `vacancy in office' shall not apply to the election of a person at a general election to fill an unexpired portion of a term of office[.]
(Emphasis added.)[4]
This definition appears to accord with the ordinary meaning of "vacancy" in connection with public offices:
 "A vacancy in an office may be caused by the death, resignation or removal of the official holding the office, or by the creation of a new office. Smith v. Askew, 48 Ark. 89. `As a general rule, there is a vacancy in office whenever there is no incumbent to discharge the duties of the office, that is, whenever the office is empty or unfilled; but as long as there is any one authorized to discharge the duties of the office, the office is not to be deemed vacant so as to authorize the exercise of the power to fill vacancies in office.' 23 Am. Eng. Enc. Law (2 Ed.), 348, 349; State v. Harrison, 113 Ind. 434, 3 Am. St. Rep. 663; People v. Edwards, 93 Cal. 157; Baxter v. Latimer, 116 Mich. 356."[5] *Page 4 
The Supreme Court in Justice similarly stated that the term "vacancy" refers to "`offices which on account of death, resignation, removal or abandonment of the previous holder thereof, or for some other cause, have in fact no incumbent.'"[6] The court further explained the concept of incumbency as follows: "An incumbent of an office is one who is in present possession of an office; one who is legally authorized to discharge the duties of that office."[7]
Of particular relevance to your question, the court inJustice found no vacancy in circumstances where the incumbent county judge was defeated by a candidate who died after the election but before taking office. Acting under a statute that purported to declare an office vacant because of the failure of one elected to the office to qualify, [8] the Governor appointed Mr. Justice on January 1, for the upcoming term. The incumbent county judge, Mr. Campbell, contested based on the so-called "holdover" provision of Article 19, Section 5 of the Constitution, which states that "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."
The Court held in favor of Judge Campbell because the deceased county judge-elect had never physically held office. No vacancy existed, the court reasoned, because no incumbent vacated the office. Campbell was a holdover under the authority of Ark. Const. art. 19, sec. 5; and an elective office occupied by a holdover cannot be considered vacant:
 `II. Majority Rule. (a) Rule stated. In a majority of jurisdictions the rule obtains that the death or disability of an officer elect before qualifying does not create a vacancy in the office which may be *Page 5 
filled by the appointing power, since he never occupied the office, and that under the provision that an incumbent shall hold his office until his successor is elected and qualified, the prior incumbent is entitled to continue in the office until the election and qualification of his successor.'
 * * * Ark. Stat. Ann. 12-113 is in conflict with the Constitution, wherein it attempts to declare an office vacant because of the failure of one elected to the office to qualify. The Constitution, Art. 19, 5, declares in substance that in that event the office is not in fact vacant — it is filled by the incumbent until his successor is elected and qualified.[9]
As Attorney General, you addressed a somewhat similar scenario in Op. Att'y Gen. 2006-217, regarding the election of a deceased candidate for alderman in the City of West Memphis. The deceased was the incumbent office-holder. He died before the election, but after the deadline for filing nominating petitions. The city council, acting pursuant to A.C.A. § 14-43-411, filled the vacancy. The appointee did not run in the election, and the question presented was whether the appointee would hold over for the following term. After noting "the long-standing interpretation of `vacancy' as the absence of an incumbent to hold office[,]" you opined that no vacancy arose when the election failed to supply an officeholder, notwithstanding the requirement in the Election Code that a "vacancy in election" be declared.[10] You concluded that "the appointee in question is an incumbent who is authorized by Ark. Const. art. 19, § 5 to serve the unexpired portion of the current term and for the duration of the upcoming term, until hissuccessor is elected and qualified." (Emphasis added).
I agree that this is the proper analysis under art. 19, § 5 jurisprudence. An elective office occupied by a holdover cannot be considered vacant.[11] In response to your *Page 6 
particular question, therefore, it would seem that if the incumbent State Representative for District 24 does not vacate the office, no "vacancy" will arise so as to authorize you to call for a special election pursuant to Ark. Const. art. 5, § 6 and A.C.A. § 7-7-105.
As you have indicated, however, Amendment 73 to the Arkansas Constitution — the term limits amendment — must also be considered.[12] Amendment 73 states in relevant part:
 (a) The Arkansas House of Representatives shall consist of members to be chosen every second year by the qualified electors of the several counties. No member of the House of Representatives may serve more than three such two year terms.
 (b) The Arkansas Senate shall consist of members to be chosen every four years by the qualified electors of the several districts. No member of the Arkansas Senate may serve more than two such four year terms.[13]
Pursuant to Section 2(a) of Amendment 73, the incumbent, Representative Rick Saunders, is term-limited at the end of his current term. The question therefore arises whether this disqualifies him from holding over pursuant to Ark. Const. art. 19, § 5. Amendment 73 does not expressly address the matter of holding over by members of the legislative branch.[14] But it does contain a so-called "general *Page 7 
repealer" clause.[15] Although it appears self-evident, it has been stated that a general clause repealing all laws in conflict does not operate to repeal any laws not in conflict.[16] When analyzing an espoused repeal by a general repealer clause in the constitution, the Arkansas Supreme Court applies the statutory construction rules regarding repeal by implication:
 A statute of a general nature does not repeal a more specific statute unless there is a plain, irreconcilable conflict between the two. Thus, the treatment of a general repealer clause does not differ from the rules applicable to a repeal by implication. The fundamental rule of that doctrine is that a repeal by implication is not favored and is never allowed except when there is such an invincible repugnancy between the provisions that both cannot stand. Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together.[17]
The court in the latter case further observed:
 This court is firmly convinced that a repeal by implication in the case of constitutional provisions is even more suspect and difficult to achieve because we are dealing with the will of the voters and not the intent of legislators, who better understand the niceties of repealing and amending statutes.[18]
In my opinion, therefore, Amendment 73 will not be held to preclude a term-limited representative or senator from holding over unless there is an "invincible repugnancy" between Amendment 73 and art. 19, § 5. This will depend upon the intent of the two constitutional provisions. *Page 8 
The intent of art. 19, § 5 is clear. The law abhors vacancies in public office.[19] A holdover provision serves the widely recognized public interest in insuring that government services continue uninterrupted.[20] Holding over does not give the incumbent a new term. Rather, the period of holding over is considered "as much a part of the [original] term as the regular period fixed by law."[21]
A clear and reliable guide to Amendment 73's intent is found in its preamble:
 The people of Arkansas find and declare that elected officials who remain in office too long become preoccupied with reelection and ignore their duties as representatives of the people. Entrenched incumbency has reduced voter participation and has led to an electoral system that is less free, less competitive, and less representative than the system established by the Founding Fathers. Therefore, the people of Arkansas, exercising their reserved powers, herein limit the terms of the elected officials.[22]
In construing Amendment 73, we must look to its history and the mischief intended to be corrected by its passage.[23] The aim is to find and give effect to the intent of those who drafted and enacted the provision at issue.[24] Amendment 73 *Page 9 
plainly was animated by elected officials' perceived preoccupation with reelection. The intent is to restore a free and democratic system of elections. The people therefore voted to limit the number of terms a member of the General Assembly may serve, in order to prevent the member from perpetuating his or her incumbency. As the Arkansas Supreme Court observed in one of the few cases addressing Amendment 73, "what the people voted for in adopting Amendment 73 was a theme or concept — the limitation of service terms for persons in public office."[25] This "limitation of public service terms"[26] was also reflected in the ballot title for the measure at the general election.[27] The court subsequently interpreted the limitation of terms mandated by Amendment 73 to mean that a member is "ineligible for reelection" after having served the allowed number of terms.[28]
Bearing in mind the respective purposes of term limits and the "holdover" under art. 19, § 5, I must conclude that these constitutional provisions are reconcilable. Article 19, section 5, has long been a part of our constitution. Similar to Article 8's provision for staggered terms,see n. 27, supra, Article 19's holdover provision is "thoroughly embedded in our law."[29] Our case law is clear that service as a "holdover" is an extension of one's term, as opposed to service beyond it.[30] If faced with the question, I believe a court would find that there is no implied repeal of art. 19, § 5 because the holdover provision is not repugnant to Amendment 73's *Page 10 
purpose to limit incumbent terms. Holding over plainly does not provide another term. The representative or senator who holds over is not reelected or serving a new term. Rather, as one of my predecessors had occasion to note, "courts have generally found that holding over is merely a defeasible extension of tenure, not an action that accords the incumbent a new fixed term."[31] My predecessor further observed:
 Arkansas law is essentially in accord with this general rule, since it acknowledges that the General Assembly, in order to implement Article XIX, § 5, could enact legislation to enable a holdover's midterm replacement. [McCoy v. Story, 243 Ark. 1, 5, 417 S.W.2d 954 (1967)]. However, until the legislature enacts legislation authorizing midterm challenges, the practical effect of holding over will be to embark on a full new term.
It is relevant to note, moreover, that a term-limited incumbent such as the current Representative for District 24 cannot be said to be preoccupied with his reelection. He obviously is aware that he is ineligible for reelection. Accordingly, the prospect of his term being extended does not negate the stated purpose of Amendment 73: restoring free, competitive, and representative elections. In sum, there is no invincible repugnancy between term limits and the holdover, in my opinion. Consequently, I must conclude that Amendment 73 did not alter art. 19, § 5.[32]
In response to your first question, therefore, it necessarily follows that unless Representative Saunders vacates the office, no "vacancy" will arise under the circumstances at hand, so as to trigger your call for a special election pursuant to Ark. Const. art. 5, § 6 and A.C.A. § 7-7-105.[33] A response to your remaining questions is unnecessary in light of this conclusion. *Page 11 
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 7-5-315(b)(1) is part of the Election Code and provides: "The votes received by any person whose name appeared on the ballot and who withdrew or died after the certification of the ballot shall be counted."
[2] Simpson v. Teftler,176 Ark. 1093, 1096 5 S.W.2d 350 (1928) (quoting McCrary on Elections, 4th edition, 153: "The Legislature alone had authority to provide for an election, and any election held without authority is a nullity.").
[3] Ark. Const. art. 5, § 6 states: "The Governor shall issue writs of election, to fill such vacancies as shall occur in either house of the General Assembly." Section 7-7-105 establishes the special election procedure for filling such legislative vacancies.See Stratton v. Priest,326 Ark. 469, 932 S.W.2d 321 (1996). Subsection 7-7-105(a)(3)(A) provides: "A special election to fill the vacancy in office shall be held on a date as soon as possible after the vacancy occurs, but not more than one hundred fifty (150) days after the occurrence of the vacancy." The Governor certifies the "fact of vacancy" to each political party and issues a proclamation setting the election dates. A.C.A. § 7-7-105(a)(1) and (b).
[4] The references to an "appointment" to fill a vacancy and a "general election" to fill an unexpired term are in recognition of Amendment 29 of the Arkansas Constitution, which provides for gubernatorial appointment, and in some circumstances a general election, to fill vacancies in most elected offices. See againStratton, supra n. 2. As noted in Stratton, however, "[Amend. 29] excepts from the Governor's appointment power vacancies in the offices of Lieutenant Governor, member of the General Assembly, and United States Congressional Representative. These are the very offices that are to be filled by special election under § 7-7-105." 326 Ark. at 472.
[5] Justice v. Campbell,241 Ark. 802, 806, 410 S.W.2d 601 (1967) (quoting Rice v.Palmer, 78 Ark. 432, 96 S.W. 396 (1906) (Riddick and Wood, J.J., concurring)).
[6] Id. at 804 (quoting State v. Green and Rock,206 Ark. 361, 175 S.W.2d 575 (1943)).
[7] Id
[8] The statute provided: "When a person elected to an office shall by reason of death, or for any other cause, fail to qualify, the office shall be deemed vacant and shall be filled as provided by the Constitution and statutes of the State." See former Ark. Stat. Ann. 12-113 (codification of Acts 1929, No. 311, § 1). The statute was held unconstitutional in Justice,supra n. 5.
The Governor acted under the assumption that he was authorized to fill the "vacancy" pursuant to Ark. Const. amend. 29 which, as noted above, dictates that vacancies in certain enumerated offices — including at that time the elective county offices — shall be filled by appointment by the Governor. Amendment 55 changed this procedure to the extent that the quorum court is substituted for the governor as the appointive authority. Hawkins v. Stover,274 Ark. 125, 622 S.W.2d 667 (1981).
[9] 241 Ark. at 804-806 (quoting from 74 A.L.R. 486) (emphasis added).
[10] A.C.A. § 7-5-315(b)(2)(A) (Supp. 2009): "If the person [whose name appeared on the ballot and who died after the certification of the ballot] received enough votes to win the election, a vacancy in election shall be declared.")
[11] I would only add with regard to the "vacancy in election" to be declared pursuant to A.C.A. § 7-5-315 that I believe such declaration probably simply ensures that the opposing candidate is not elected when a deceased candidate wins. Cf. Rubens v.Hodges, 310 Ark. 451, 452, 837 S.W.2d 465 (1992) (an election contest in which the court cited A.C.A. § 7-5-315 after noting that the opposing candidate "apparently realized that when a deceased or disqualified candidate wins an election, the votes received by the deceased or ineligible candidate are not void, but are effectual to prevent the opposing candidate from being chosen.")
[12] Before setting out your questions, you observed that Op. Att'y Gen. 2006-217 "is not determinative in this case because the office in question was not, as is the case here, subject to Amendment 73's term limits provisions." Letter from Governor Mike Beebe to Attorney General Dustin McDaniel (November 9, 2010).
[13] Ark. Const. amend. 73, § 2 (emphasis added).
[14] Section 1 of Amendment 73 states that all officials of the executive department shall "hold their offices for the term of four years, and until their successors are elected and qualified." This language echoes Ark. Const. art. 19, § 5. The absence of such language in Section 2 regarding the legislative branch might appear to suggest that there is no holdover period for members of the General Assembly. However, a historical review reveals that this distinction has long been a part of our constitution.Compare
Ark. Const. art. 5, §§ 2 and 3 (legislative department) with Ark. Const. art. 6, § 1 and amends. 56 and 63 (executive department). I am consequently unable to accord much weight to the distinction. It is my opinion, as explained further herein, that the issue remains focused on whether there is an irreconcilable conflict between Amend. 73, § 2 and art. 19, § 5.
[15] Id. at § 6(b): "All laws and constitutional provisions which conflict with this Amendment are hereby repealed to the extent that they conflict with this amendment."
[16] May v. McCastlain, Commissioner,244 Ark. 495, 426 S.W. 158 (1968).
[17] City of Fayetteville v. Washington County,369 Ark. 455, 471, 255 S.W.3d 844 (2007), quoting Doe v.Baum,348 Ark. 259, 274-75, 72 S.W.3d 476 (2002) (internal citations omitted).See also Moore v. McCuen,317 Ark. 105, 108, 876 S.W.2d 237 (1994) (same).
[18] City of Fayetteville, 369 Ark. at 471.
[19] Hutcheson v. Pitts,170 Ark. 248, 251, 278 S.W. 639 (1926) ("It has been frequently said that it is an elementary principle that the law abhors vacancies in public offices, and great precaution is usually taken against their occurrence.").
[20] See, e.g., Opinion of the Justices,672 A.2d 4 (Del. 1995) (constitutional holding-over provision serves to prevent vacancy or interregnum in public office so that public business will not be subjected to doubt or dispute);Janof v. Koch, 413 N.Y.S.2d 404 (N.Y.A.D. 1979) (holding over after expiration of term warranted to prevent lapse in or disruption of essential government services); Opinion of the Justices,298 A.2d 118 (N.H. 1972) (holdover provision designed to prevent hiatus in functioning of office and not to postpone beginning of next statutory term of office).
[21] Faulkner v. Woodard,203 Ark. 254, 257, 156 S.W.2d 243 (1941), citing Wood v.Miller, 154 Ark. 318, 242 S.W. 573 (1922).
[22] Amendment 73 was proposed by initiative petition and approved at the 1992 general election.
[23] Foster v. Jefferson County Quorum Court,321 Ark. 105, 901 S.W.2d 809, 321 Ark. 116-A, 116-E on rehearing (1995).
[24] See generally City of Fayetteville v. WashingtonCounty, 369 Ark. 455, 255 S.W.3d 844 (2007); Kervin v.Hillman, 226 Ark. 708, 292 S.W.2d 559 (1956).
[25] United States Term Limits, Inc. v. Hill,316 Ark. 251, 269, 872 S.W.2d 349 (1994). In Hill, the Arkansas Supreme Court, among other things, interpreted Amendment 73 to apply prospectively, only to periods of service commencing on or after January 1, 1993.
[26] Id.
[27] Id. at 255.
[28] Moore v. McCuen, 317 Ark. 105, 876 S.W.2d 237 (1994). InMoore, the Arkansas Supreme Court held that Amendment 73 did not address the two-year terms for state senators resulting from reapportionment under Article 8 of the Arkansas Constitution.See Ark. Const. art. 8, § 6, as amended (Publisher's Notes). The court noted that "Amendment 73 does not mention a cap on the total number of years a senator may serve." 317 Ark. at 108. Thus, the court held that the two-year terms resulting from reapportionment do not count as a "term" for purposes of term limits, and that a senator would not be precluded from serving such a two-year term, plus two four-year terms after January 1, 1993. The court noted, however, that it did not believe Amendment 73 supported a senator's serving an abbreviated two-year term after having served two four-year terms. Id. at 111.
[29] Id. at 109, quoting Williams v. Eldrod,244 Ark. 671, 673, 426 S.W.2d 797 (1968) regarding the relation between Article 8 and the constitutional provision for four-year terms for senators.
[30] Faulkner, supra n. 20.
[31] Op. Att'y Gen. 2000-139 (citing Westphal v. City of CouncilBluffs, 275 N.W.2d 439 (Iowa 1979) (tenure of holdover officer not necessarily equal to term of regularly appointed officer);Kelly v. Kelly, 292 N.W. 479 (Mich. 1940) (holding over is authorized merely for convenience to avoid vacancy and confers no right for any defined period); State ex. rel. Fares v.Karger, 77 N.E.2d 746 (Ind. 1948) (additional holdover term only contingent and defeasible.))
[32] Accord Jennings v. Woods,194 Ariz. 314, 982 P.2d 274 (1999) (holding that term limits imposed by Ariz. Const. art. 15, § 1 — "No member of the Corporation Commission shall hold that office for more than one consecutive term" — was not violated by the incumbent officeholder's period of holding over).
[33] I believe it bears mentioning that if the office is in fact vacated, the successful candidate in the special election will begin a period of service that, in my opinion, will not count as one of the terms authorized by Amendment 73. This was the conclusion reached in Op. Att'y Gen. 2002-073, in response to the question: "If a person is elected to the Legislature, in a Special Election to fill an unexpired term, can he still serve 6 more years in the House of Representative or 8 more years in the Senate?" After quoting fromMoore, supra n. 28, a predecessor in this office expressed his belief that "the Arkansas Supreme Court would in all likelihood conclude that an initial partial term should not be included in the term-limit calculation set forth in Amendment 73."