Herbert L. **ZIESKE** et al., Plaintiffs,

v.

E. **BUTZ,** Individually and as Secy. of Ag. of the U. S., et al., Defendants,

v.

**ROBERTSON & SONS, INC.,**
Defendant-Intervenor.

**No. J75–2 Civil.**

United States District Court,
D. Alaska.

May 5, 1976.

Richard D. Folta, Haines, Alaska, William Royce, Jernberg & Taylor, Ketchikan, Alaska, G. Keith Grim, Robert R. Davis, Jr., Lane, Powell, Moss & Miller, Seattle, Wash., for plaintiffs.

Gordon E. Evans, Engstrom & Evans, Juneau, Alaska, for intervenor Bohemia, Inc.

G. Kent Edwards, U. S. Atty., Anchorage, Alaska, L. Mark Wine, Dept. of Justice, Washington, D. C., for defendants.

Peter R. Ellis, Ellis & Sund, Inc., Ketchikan, Alaska, for intervenor.

James F. Clark, J. P. Tangen, Robertson, Monagle, Eastaugh & Bradley, Juneau, Alaska, Leonard B. Netzorg, Portland, Or., for amici curiae, Schnabel Lumber Co., et al.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

This cause comes before the court upon defendant Ketchikan Pulp Company's motion to amend the judgment of this court entered on February 23, 1976, in accordance with the court's order of December 23, 1975. *See, Zieske v. Butz,* 406 F.Supp. 258 (D.Alaska 1975). The motion to amend judgment, in effect, asks the court to reconsider its earlier order insofar as it concerns the meaning and application of the Organic Act of 1897, 16 U.S.C. §§ 475–482, 30 Stat. 34–36, as applied to the facts of this case. For reasons to appear subsequently, the court finds that its order of December 23, 1975 and its judgment of February 23, 1976, correctly apply the Organic Act to the un-

disputed facts of the instant case. Accordingly, the court denies Ketchikan Pulp Company's motion to amend judgment.

The defendants and *amicus curiae,* representing the interests of approximately one hundred and fifty lumber companies, have advanced four principal arguments,[1] three of which are raised for the first time by this motion, in support of their contention that the Organic Act of 1897 was erroneously applied and interpreted by the court. First, it is contended that the decision of the United States Court of Appeals for the Fourth Circuit in *West Virginia Division of the Izaak Walton League of America, Inc. v. Butz,* 522 F.2d 945 (1975), is wrong and should not be followed.[2] Second, the defendants argue that the prefatory language of section 475, 16 U.S.C. § 475, 30 Stat. 35, "[A]nd all public lands that may hereafter be set aside and reserved as public forest reserves under said Act, shall be as far as practicable controlled and administered in accordance with the following provisions:"[3] gives the Secretary of Agriculture the discretionary authority to sell timber which is neither dead, matured, nor large growth if it is expeditious to do so. Third, Ketchikan Pulp Company maintains that the Tongass Resolution of 1947, 61 Stat. 920–21, while not expressly validating the contract that is the subject of this litigation, is an implicit Congressional recognition and ratification of clearcutting as an acceptable method of timber harvesting for the Tongass National Forest. Finally, *amicus curiae* argue that the Materials Act of 1947, as amended, 30

U.S.C. §§ 601–604, 69 Stat. 367, amending 61 Stat. 681, is an independent grant of authority to the Secretary of Agriculture by which he may dispose of timber that is neither dead, matured, nor large growth.

Turning to the first issue, the correctness of the Fourth Circuit's decision in *West Virginia Division of the Izaak Walton League, Inc. v. Butz, supra,* it is sufficient to say that a careful review of both the statutory language and legislative history of the Organic Act reinforces this court's conviction that the Fourth Circuit's interpretation of that Act coincides with what Congress said, and intended to say, in 1897.

The second contention of the defendants, one not raised heretofore, is that the prefatory language, "As far as practicable," 16 U.S.C. § 475, gives the Secretary of Agriculture the discretion to sell and to authorize the cutting of timber which is neither dead, mature nor large where it is "impracticable" to follow the specific Congressional mandate of section 476.[4] Since the uncontested facts of this case support the Secretary's position, that clearcutting is the only commercially feasible method of timber harvest in the Tongass,[5] the court must determine whether Congress intended that the introductory language "as far as practicable" have the effect advanced by the Secretary. That Congress could have intended to give the Secretary such wide discretion is refuted by the legislative history of the Act. For example, the McRae bill introduced in the 1893 session, provided that timber of a "commercial nature" could

---

1. Actually, five arguments have been raised. However, the passage of title argument advanced by *amicus curiae* is so devoid of merit that it will not be addressed.

2. The district court decision is reported at 367 F.Supp. 422 (N.D.W.Va.1973).

3. The quoted language is actually taken from the Statutes at Large since that language differs slightly from the codified but unenacted language of title 16 of the United States Code.

4. This argument was not raised in *West Virginia Division of the Izaak Walton League of America, Inc. v. Butz,* 522 F.2d 945 (4th Cir. 1975) since there it was clear that other "practicable" silvicultural methods existed which were available to the Forest Service in that the Monongahela National Forest was a young, second-growth forest in which selective systems of cutting had been practiced until 1964.

5. This is caused by a variety of factors such as blowdown, soil instability, dwarf mistletoe, and the climax nature of most of the Tongass.

be sold.[6] However, in 1894 that language was replaced with the more restrictive wording, "dead or matured trees."[7] It is reasonable to conclude that Congress inserted the very specific language, "dead, matured, or large growth" contained in the final version of the bill, as enacted in 1897, to insure that the Secretary did not have the discretion to sell that timber which was commercially practicable to sell but which was neither dead, matured, nor large. To read the general prefatory language "as far as practicable" in the manner asserted by the Secretary would completely nullify the specific Congressional limits imposed upon him. Surely, Congress could not have intended such a result.[8] In short, where Congress has established specific statutory directives, neither the judiciary nor the executive is at liberty to ignore them because of the inclusion of a few words signifying some small amount of discretion. *See, Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 411–12, 91 S.Ct. 814, 821, 28 L.Ed.2d 136, 150–51 (1970).

■ The defendants next argue that the Tongass National Forest should be treated differently than every other national forest because of the Tongass Resolution of 1947, 61 Stat. 920–21. While that resolution may have had the effect of validating certain contracts formed prior to its passage, obviously it did not confirm the contract that is the subject of this litigation. Further, the language of the resolution neither directly nor indirectly addresses the practice of clearcutting. Rather the statutory language makes specific reference to the provisions of the Organic Act of 1897.

While it is true that the legislative history of the Tongass Resolution demonstrates that some members of Congress were aware that clearcutting would be the prevalent method of timber harvest in the Tongass,[9] it is apparent that the sole purpose of the resolution was to clear title to the timber involved in order to avoid protracted lawsuits based upon aboriginal claims. Since the method of timber harvesting to be pursued was, at most, a collateral issue, the court is unwilling to find that the Tongass Resolution is a Congressional authorization of a practice clearly violative of the specific language of the Organic Act.

The argument advanced by *amicus curiae* is that the Materials Act of 1947, as amended,[10] is an independent grant of authority to the Secretary of Agriculture by which he may sell timber which is neither dead, matured, nor large growth. It is argued that since Congress has plenary power over federal property pursuant to Article 4, Section 3, Clause 2 of the Constitution, the Organic Act of 1897 must be viewed as a grant of power to the Secretary, rather than a limitation on his actions. Further, the defendants contend that if the Organic Act is viewed as a Congressional grant of authority, then it follows that the Materials Act should be considered an independent grant

---

6. 25 Cong.Rec. 2371 (1893); *see, West Virginia Division of Izaak Walton League of America, Inc. v. Butz, supra,* at 951.

7. 27 Cong.Rec. 264 (1894); *see, West Virginia Division of the Izaak Walton League of America, Inc. v. Butz, supra,* at 951.

8. While the Fourth Circuit was not called upon to address the "As far as practicable" language, that court did decide that the Secretary's discretion was clearly limited as to the type of timber that could be sold. *West Virginia Division of the Izaak Walton League of America, Inc. v. Butz, supra,* at 952.

9. *See, Hearings,* H.J.Res. 205, House Committee on Agriculture, 80th Cong., 1st Sess. at 26–27 (1947).

10. 30 U.S.C. §§ 601–604; 61 Stat. 681. That Act, while initially addressed only to the Secretary of Interior, was amended on July 23, 1955, 69 Stat. 367, in order to give the Secretary of Agriculture the same authority that the Secretary of Interior had. Section 601 provides in part, "The Secretary . . . may dispose of mineral materials . . . and vegetative materials (including but not limited to . . . timber or other forest products) on public lands of the United States . . . if the disposal of such mineral or vegetative materials (1) is not otherwise expressly authorized by law . . ., and (2) is not expressly prohibited by laws of the United States, and (3) would not be detrimental to the public interest."

of power which is in no way limited by the provisions of the Organic Act.

The short answer to this argument is that the Organic Act, properly viewed, is both a grant and a limitation on the power of the Secretary. It is a grant to sell timber located within the confines of public lands which have been set aside for National Forest purposes. However, the Act is also a limitation on the type of timber that may be sold from such lands. At least that much is clear from the legislative history of the Act. When the Act is viewed in such a manner, it would be senseless to hold that the general provisions of the Materials Act, as amended, were intended to repeal by implication the specific statutory mandate of the Organic Act.[11] This is particularly true where the 1955 amendments were not even remotely concerned with the type of timber that could be harvested from our National Forests.[12]

Further, by its own language it would appear that the Materials Act, as amended, does not apply to timber sales executed by the Secretary of Agriculture on National Forest lands. That Act specifically provides that it is inapplicable where the disposal of such vegetative material, here timber,[13] is expressly authorized by law. 30 U.S.C. § 601. Since the Organic Act does expressly provide for sales of timber located within the National Forests and since the contract in question was entered into under the express authority of the Organic Act,[14] the court finds that the Materials Act of 1947, as amended, is inapplicable to the sale involved herein.

Accordingly, IT IS ORDERED:

THAT Ketchikan Pulp Company's motion to amend judgment is denied.

---

11. A somewhat similar argument was rejected by the Fourth Circuit in *West Virginia Division of the Izaak Walton League of America, Inc. v. Butz, supra,* at 953–54, in relation to the Multiple-Use Sustained-Yield Act of 1960, 16 U.S.C. §§ 528–531.

12. *See,* House Committee Report on 1955 Amendments to the 1947 Materials Act, H.Rep. No.730, 84th Cong., 1st Sess.; 1955 U.S.Cong. and Adm.News, vol. 2, pp. 2474–2495.

13. Of course it can be argued that we are here concerned with the cutting of small-young timber which is not authorized by the Organic Act. However, it is obvious that the qualifications (1) and (2) to section 601 were provided to avoid just this type of conflict; that is, a conflict between a general and a specific statute.

14. See Appendix B to the final environmental statement for the Ketchikan Pulp Company Timber Sale 1974–1979 Operating Period.