**BHP PETROLEUM SOUTH PACIFIC, INC., Petitioner,**

**v.**

**AMERICAN SAMOA GOVERNMENT, OFFICE OF PROCUREMENT, a duly organized agency of the American Samoa Government, TAUESE P.F. SUNIA, Governor of American Samoa, Respondents.**

---

**MOBIL OIL AUSTRALIA, LTD., Intervenor/Real Party in Interest.**

High Court of American Samoa
Appellate Division

AP No. 18-97

July 9, 1998

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, WARD, Acting Associate Justice, TUAOLO, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Petitioner, Brian M. Thompson and Roy J.D. Hall, Jr.
    For Respondents, Henry W. Kappel and Douglas Juergens, Assistant Attorneys General
    For Intervenor/Real Party in Interest, Marshall L. Ashley, E. Mason Martin and David P. Vargas

### ORDER REVERSING AND REMANDING AWARD OF PROCUREMENT CONTRACT REQUEST FOR PROPOSALS 001-97

Petitioner BHP Petroleum South Pacific, Inc. ("BHP") brought this action for judicial review of the administrative decision by respondents American Samoa Government ("ASG"), Office of Procurement, a duly organized agency of ASG ("ASGOP"), and Tauese P.F. Sunia, Governor of American Samoa ("the Governor") to award the contract under the Request for Proposals 001-97 ("RFP 001-97"), Qualified Companies to Operate Fuel Storage Facilities ("the contract") to intervenor/real party in interest Mobil Oil Australia, Ltd. ("Mobil"). BHP seeks a permanent injunction preventing ASG from entering the contract with Mobil and requiring ASG to enter the contract with BHP.

## Background

ASG issued RFP 001-97 on January 21, 1997. ASG sought to contract a terminal operator for ASG's petroleum products storage facilities and fuel dock, and for a principal supplier of petroleum products. The contract was for the period January 1, 1998 through December 31, 1999, with an option to renew for one year. BHP, Mobil, and two other companies, Shell Fiji ("Shell") and Global Pacific Energy ("Global") submitted proposals.

The Governor (acting as chief procurement officer) appointed a source evaluation board ("SEB") to evaluate the proposals. The SEB did not reach a consensus on recommending a single prospect, so it recommended both BHP and Mobil to the Governor (acting as chief procurement officer). The SEB requested that "the Governor of the Territory of American Samoa determine to whom to award the contract between these two final contenders based on the findings herein."

On June 16, 1997, the Governor (acting both as chief procurement officer and as the governor), issued General Memorandum 78-1997, which announced the award of the contract to Mobil. BHP, Global and Shell subsequently submitted their notices of dispute to the Governor (acting as chief procurement officer). A.S.A.C. § 10.0282(b) establishes the procedures to follow in such a dispute:

> (b) Requirements. All such disputes shall be submitted in writing to the procurement officer making the decision. The procurement officer shall acknowledge receipt of the dispute within 5 working days of receipt and shall render a final decision within 30 working days after receipt of the dispute.

On August 7 and 8, 1997, the Governor (acting as chief procurement officer) issued his final decision in response to Global's and BHP's notices of dispute. BHP then filed an appeal with the Governor (acting as governor) on either August 22 or 26, 1997 and Global did so on September 22, 1997. A.S.A.C. § 10.0282(c) establishes the procedures to be used in

such an appeal:

> (c) Appeals. Appeals of a procurement officer's final decision in a dispute may be made within 60 days of the date of the decision, provided such appeal is submitted in writing to the Governor. The Governor shall appoint a board of at least three responsible persons knowledgeable of procurement to review such appeals and recommend appropriate action to the Governor. None of the board members shall have participated in the action under appeal. At least one of the board members shall be a qualified attorney. Hearing procedures and documentation shall be set forth in the Administrative Procedures Act, 4.1025 A.S.C.A. *et seq.*, and the rules.

On October 14, 1997, stating that it was doing so because the Governor (acting as governor) had not yet appointed an appeal board as required by A.S.A.C. § 10.0282(c), BHP petitioned this court for judicial review, and for a temporary restraining order, and preliminary and permanent injunctions preventing ASG from entering the contract with Mobil and requiring ASG to enter the contract with BHP. ASG, ASGOP and the Governor responded to this petition on November 7, 1997, and a show cause hearing was held on November 12, 1997. On November 18, 1997, the court stayed both implementation of the contract and further judicial proceedings. Mobil moved to reconsider this order, and the motion was denied.

On November 6, 1997, subsequent to BHP's petition to the court, the Governor (acting as governor) appointed an appeal board. The appeal board held hearings on November 20 and 21, 1997. BHP, ASG, Mobil and Shell were present at these hearings and presented testimony and evidence. Global was not present. The appeal board issued its Findings of Fact, Conclusions of Law, and Recommendations on February 20, 1998. The board determined that the Governor had authority to act as chief procurement officer, that there was sufficient notice to prospective offerors that a competitive negotiation process would be followed, and that BHP had failed to meet its burden in showing that Mobil's bid was not responsive. The board also concluded that there had been flaws in the procurement process, and recommended remand of the procurement to the Governor (acting as chief procurement officer) and the SEB to correct these deficiencies.

The appeal board forwarded its recommendation to the Governor (acting as governor), who objected to the findings but agreed that it would be in the best interest of all the parties to concur with the panel's recommendation. The Governor (acting as governor) then remanded the matter to the Governor (acting as chief procurement officer) and the SEB.

13

The Governor (acting as chief procurement officer) reconfigured the SEB by making a new appointment to the board. The SEB reviewed the original proposals, conducted discussions with the three offerors, and solicited best and final offers. The SEB then reviewed the best and final offers and forwarded its findings and recommendations to the Governor (acting as chief procurement officer) on March 30, 1998. The SEB ranked Mobil first, Shell second, and BHP third. The Governor (acting as chief procurement officer) adopted this recommendation and reissued a Notice of Award on April 24, 1998 advising of his decision to award the contract to Mobil.

BHP filed a notice of dispute with the chief procurement officer on May 4, 1998. The Governor (acting as chief procurement officer) reissued his notice of final decision, upholding his award to Mobil. BHP then, pursuant to A.S.A.C. § 10.282(c), filed a timely appeal with the Governor (acting as governor), requesting that he appoint an appeal board to review the renewed final decision of the Governor (acting as chief procurement officer).

On March 9, 1998, after the original appeal board issued its Findings of Fact, Conclusions of Law, and Recommendations but before the Governor (acting as governor) took any action on the recommendations, BHP filed the motion to enter "permanent orders" that is currently before this court. We held a hearing on this motion on April 14, 1998. On April 22, 1998, a minute order was issued to require ASG to file a complete record of the procurement appeal process by May 11, 1998. On April 29, 1998, ASG issued a notice that it had completed the administrative proceedings. ASG transmitted the administrative record of the procurement appeal process to the court on May 11, 1998, and supplements to the administrative record on June 19 and 23, 1998. We held a further hearing on the motion to enter "permanent orders" on June 24, 1998.

### Standard of Review

■ The court's authority to review administrative decisions in the procurement process is found in A.S.C.A. §§ 3.0208(c), 4.1040-.1044 and A.S.C.A. § 10.0282. We do not substitute our judgment for that of the agency on questions of fact, but it is our place to determine questions of law. A.S.C.A. § 4.1043(b). Our review is confined to the record. A.S.C.A. § 4.1043. Under A.S.C.A. § 4.1044, we may:

> . . . reverse or modify the decision of the agency, or remand the
> case for further proceedings, if substantial rights of the petitioner
> have been prejudiced because the decision of the agency is:
> (1) in violation of applicable constitutional or statutory
> provisions;

14

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record;

(6) arbitrary, capricious or characterized by abuse of discretion.

## Discussion

■ BHP posits that it was the lowest reasonable, responsive, responsible bidder meeting the requirements of the invitation for bids, that Mobil's proposal failed to meet a number of the bid specifications, and that the procurement process was replete with errors. Most importantly, BHP argues that the Governor may not act as chief procurement officer. This issue is a question of law, and thus is subject to our review. It is also preliminary to the other issues raised by BHP. The appeal board found that the Governor has the authority to act as chief procurement officer. We disagree. We find that under the facts of the procurement process for RFP 001-97, the Governor violated both constitutional and statutory provisions by acting as chief procurement officer. We therefore do not need to consider the remainder of BHP's claims.

■ American Samoa has a tripartite system of government. Reflecting the structure of the federal government established in the United States Constitution, the Revised Constitution of American Samoa clearly establishes three separate branches of government. The Legislature is established under article II, the Judicial Branch under article III, and the Executive Branch under article IV. "The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of government mechanism. Its object is basic and vital, namely, to preclude a commingling of these essentially different powers of government in the same hands." *O'Donoghue v. United States*, 289 U.S. 516, 530, 53 S.Ct. 740, 743, 77 L.Ed 1356, ___ (1933), citation omitted. *See also Loving v. United States*, 517 U.S. 748, 756, 116 S.Ct. 1737, 1743, 135 L.Ed.2d 36, ___ (1996).

■ The executive branch, as defined by the Revised Constitution of American Samoa, art. IV, includes the offices of governor, lieutenant governor, and secretary of Samoan Affairs. Some of the powers of the governor are conferred in article IV; the source of other powers are found in various sections of the statutory code. When taking office, the governor swears to "well and faithfully uphold the laws of the United States applicable to American Samoa, and the Constitution and laws of American Samoa." Rev. Const. Am. Samoa art. V, § 6. The governor is charged with being "responsible for the faithful execution of the law," and has the

15

powers, duties and responsibilities as delegated to him by the American Samoa Code. A.S.C.A. § 4.0111.

The laws for which the governor is responsible for "faithful execution of" are established by a separate branch of the government, the legislative branch. Article II of the Revised Constitution of American Samoa establishes the Senate and the House of Representatives as comprising the legislative branch and confers authority to this branch to establish laws of local application.

■ The system of appointment of certain officers of ASG highlights the importance of the separation of the branches of government, and the checks and balances that this separation should provide. Under this system, the office and the credentials required by the office are created by the Legislature. The Legislature grants to the executive the power to appoint the officer, but conditions this power upon confirmation of the appointment by the Legislature. Under A.S.C.A. § 12.0205, for example, the Legislature created the office of procurement and the position of chief procurement officer. The Legislature enumerated the method of appointment for this office in A.S.C.A. § 12.0206. "The Governor shall appoint and the Legislature shall confirm, a chief procurement officer." *Id.* The Legislature also requires the chief procurement officer to have a certain number of years of experience in public procurement and demonstrated executive and organizational ability. *Id.*

■ By appointing himself as chief procurement officer, the Governor has violated both the statutes and the Revised Constitution of American Samoa. "The power to make appointments to public office does not necessarily and inherently belong to the governor. It must be derived from the constitution or statutes; otherwise, he may not possess it. More specifically, appointing power exists only in so far as it has been expressly conferred by the constitution and laws of the state." 38 AM. JUR. 2D, *Governor* § 5 (1968 & 1993 Supp.); *Leek v. Theis*, 539 P.2d 304, 314-21 (Kan. 1975); *Buchholtz v. Hill*, 13 A.2d 348, 351-52 (Md. 1940).

■ Article IV, section 7 of the Revised Constitution of American Samoa states that "[t]he Governor shall have general supervision and control of all executive departments, agencies and instrumentalities of the Government of American Samoa." This is a general supervisory power and gives the governor no power of appointment. Article IV, section 11 is the provision that gives the governor the power to appoint officials. Article IV, section 11 also indicates specific limitations of that power. The governor may freely appoint only those officials who are not elected, are not appointed by the Secretary of the Interior, or whose appointments are not otherwise provided for. The chief procurement officer is clearly an official whose appointment is "otherwise provided for." The Governor must therefore

16

follow the requirements established by the Legislature when appointing the chief procurement officer. A.S.C.A. § 4.0112 also discusses the governor's appointment power. Markedly, it emphasizes that for particular positions, the governor's power of appointment is subject to the confirmation of the Legislature.

■ The Governor cannot expand his specifically limited power of appointment to a degree where he can appoint himself as chief procurement officer. By statute, the Governor only has the power to make procurements himself in an emergency, "when there exists a threat to public health, welfare, or safety under emergency conditions as defined under 26.0105(d) ASCA." A.S.C.A. §. 12.0213. Even in an emergency situation, the procurement must be as competitive as possible, and must be accompanied by a written determination of the basis for the emergency. *Id.*

Although we indicated in *Haleck's West, Inc. v. Coleman*, AP No. 29-84, slip op. at 3 (Appellate Div. 1984), that the governor may in certain circumstances be empowered to award a contract, we did not indicate that the governor could appoint himself as chief procurement officer or that he could assume the duties of the chief procurement officer. In *Haleck's West*, the governor had submitted an appointment of chief procurement officer to the Legislature, but the Legislature had not yet confirmed that appointment. In the present case, on the other hand, the Governor has submitted no name to the Legislature for confirmation. The Governor states that he has appointed himself as chief procurement officer.

Even if the Governor could appoint himself as chief procurement officer, he would need to do so within the limits specifically established by the Legislature. The Governor would need to show that he meets the qualifications required of the chief procurement officer. A.S.C.A. § 12.0206. And the Governor would need to submit his appointment of himself for confirmation by the Legislature. *Id.* The Governor has not done this.

■ The Governor thus may not unilaterally expand the power of appointment granted to him by these constitutional and statutory provisions. The Governor also is not at liberty to ignore or suspend the operation of these statutes. Rev. Const. Am. Samoa art. IV, § 12; *see also, e.g. Olegario v. United States*, 629 F.2d 204, 224 (2nd Cir. 1980) ("The Constitution's grant of executive authority does not include the right to nullify legislative acts or ignore statutory directives."); *Zieske v. Butz*, 412 F. Supp. 1403, 1406 (D. Alaska 1976) (holding that where Congress has established specific statutory directives, neither the judiciary nor the executive is at liberty to ignore them, even if the directives include words signifying some amount of discretion).

17

The Governor presents his general constitutional supervisory power set forth in article IV, section 7 of the Revised Constitution of American Samoa as justification for assuming the role of chief procurement officer. This supervisory power, however, does not allow the Governor to ignore operation of the statutes. The Governor must exercise his constitutional powers within the laws established by the Legislature, not in an attempt to avoid them. *Cf. Vaela`a v. Sunia*, 1 A.S.R.3d 88, 93-95 (Trial Div. 1997) (holding that the Governor, even if he were properly applying his constitutional pardon power to undocumented aliens, would still be bounded by the immigration laws and administrative rules.)

When the Legislature enacted the American Samoa Procurement Act of 1983, A.S.C.A. § 12.0201-.0219, it carefully proscribed a system of government purchasing which would ensure predictability and fairness to all participants. By acting as chief procurement officer, the Governor disturbs the integrity of this system. In the current case, for example, the Governor (acting as chief procurement officer) did not appoint an administrative appeal board until after BHP filed its first petition in this case with the court. Similarly, the Governor (acting as governor) did not take action on the appeal board's February 20, 1998 Findings of Fact, Conclusions of Law and Recommendations until after BHP filed the current motion for "permanent orders". The sequence of these events appears to be a result not of coincidence, but of one person performing two different legislated functions.

Similarly, by acting as chief procurement officer, the Governor disturbs the dispute process legislated within the procurement act. Under the Governor's system, offerors or other participants disputing a procurement decision are faced with making an appeal first to the Governor acting as chief procurement officer, and then to the Governor acting as governor. The administrative rules clearly envisioned the procurement appeal process to include two different individuals carrying out the responsibilities of two separate offices.[1] The rules did not envision the procurement appeal process to include one individual commingling the powers of two separate offices.

We find, therefore, that the actions of the Governor in appointing himself as and acting as chief procurement officer in the procurement process for RFP 001-97, has exceeded the scope of his constitutional and legislatively granted powers, and has violated the Revised Constitution of American

---

[1] An administrative rule, adopted under the Administrative Procedures Act, A.S.C.A. §§ 4.1001-.1044, has the full force and effect of law. A.S.C.A. § 4.1009(c).

Samoa and the procurement provisions of the American Samoa Code Annotated and the American Samoa Administrative Code. It follows that substantial rights of BHP have been prejudiced. Under A.S.C.A. § 4.1043(b), then, we reverse the decision of the Governor to award the contract under RFP 001-97 to Mobil.

In its motion for "permanent orders", BHP not only seeks to permanently preclude ASG from entering the contract under RFP 001-97 with Mobil, but also seeks to have the court award the contract to BHP. We find that due to the constitutional and statutory errors in the procurement process for this contract, awarding the contract to BHP is not an appropriate remedy. Instead, if the ASG, ASGOP and the Governor intend at this time to procure a terminal operator for ASG's petroleum products storage facilities and fuel dock and a principal supplier of petroleum products, they must do so by lawfully following the constitutional, statutorily, and administratively proscribed procurement procedures.

## Order

The Governor's award of the contract under RFP 001-97, Qualified Companies to Operate Fuel Storage Facilities, to Mobil is reversed. In order for ASG and ASGOP to lawfully engage in future procurements, the Governor must appoint an individual other than himself as chief procurement officer and submit his or her name to the Legislature for confirmation.

BHP's petition for the court to grant award of the contract under RFP 001-97, Qualified Companies to Operate Fuel Storage Facilities, to BHP is denied.

We remand the procurement of the terminal operator for ASG's petroleum products storage facilities and fuel dock, and for a principal supplier of petroleum products to ASG, ASGOP, and the Governor to initiate new procurement proceedings conducted in compliance with the constitutional, statutory and administrative procurement requirements.

It is so ordered.